EDWARD HARRIS *v.* THE SOCIAL MANUFACTURING COMPANY.

When arbitrators are constituted by the parties the judges of the law, the facts, and the equity of a case, their award will not be annulled, if it appear that it is within the terms of the submission, fairly construed, and furnishes a rule sufficiently certain to define and limit the rights of the parties, and under which those rights may be enforced:—no mistake of law or of any material fact appearing on the face of the award, or by admission of the arbitrators, nor any partiality or corrupt conduct on their part, or misbehavior in the parties, being pretended.

DEMURRER to a bill in equity, seeking to annul an award of referees under a rule of the Court of Common Pleas.

The bill set forth, that a difference having arisen between the complainant and the defendant company, as to the right of the defendant to maintain its dam to a certain height, to the injury of the plaintiff's mill privilege above on the same stream, they, under a rule of court, submitted the matter in dispute to arbitrators, who made a report and award to the Court of Common Pleas, by which it was received and confirmed, on the afternoon of the last day of its December term, 1860. It was admitted in the bill that no objection was made to the reception of the report, by the plaintiff, but, in explanation, it was stated that he was not aware that the report was to be made until the afternoon on which it was confirmed, and that he was unable seasonably to find counsel, and obtain advice as to his rights and duties. The several grounds upon which the plaintiff relied were also set

forth in the bill, together with many details of the evidence submitted to the referees.　These are presented, with sufficient fullness, in the opinion of the court.

*R. W. Greene, for the plaintiff.*

*Currey, for the defendant.*

BULLOCK, J.　This bill seeks to annul an award.　The defendants demur to the bill, as presenting no case for equitable relief.

It is said the award should be annulled, as not conforming to the submission; that the submission called upon the arbitrators to adjudicate upon the "present or other fixed height of the defendants' dam;" and that, as this dam then had a fixed height, with no movable flash-board right, there was no authority, under the submission, in the arbitrators to award such a right.

There is no doubt that an award should, in all material points, pursue the submission.　The parties agree as to what they will submit, and if the arbitrators adjudicate upon any matter or right not within the fair terms of the submission, their award, as to such matter or right, is a nullity and not binding.　It is equally true, that every reasonable intendment is to be made in favor of an award.　It will be intended that the matter or right adjudged was submitted, until the contrary appears.　*Strong* v. *Strong*, 9 Cush. 564, 565.

In this case, the plaintiff and the defendants owned different water privileges upon the same stream.　The defendants had raised their solid dam and flash-boards.　The plaintiff alleged that this was against right, and to the injury of his water privilege.　These allegations the defendants deny.　Therefore, they enter into an agreement to submit their respective rights to arbitration.　The submission recites, that disputes have arisen between the parties, and that they are desirous of amicably adjusting the same.　They then agree that "their respective rights in the premises, and all questions in dispute between them, relating to this dam, be submitted to," &c.　And the arbitrators named, or a major part of them, are to decide upon the "respective rights" of the parties "at law and in equity."　This is all of the submission material in this connection to be considered.

The submission is to be construed in the light of the admitted

antecedent facts. What differences had arisen between these parties, which these arbitrators were amicably to adjust? What use of, or control over, this water privilege, had the defendants previously exercised, claiming that right; and what injury did the plaintiff deem he had sustained in consequence? In 1841, the defendants maintained a solid dam to a level with the top of the "great rock" in the pond above, with fixed six-inch flash-boards a portion of, and movable six-inch flash-boards the rest of the year. In 1855, they placed twelve-inch movable flash-boards upon this dam. In May, 1859, the defendants raised their solid dam twelve inches, and placed upon it twelve-inch movable flash-boards. In September, of the same year, this submission was entered into.

The right alike to raise their solid dam, and place flash-boards thereon of an additional height, the defendants claimed and exercised. This right the plaintiff denied, and alleged, as the injury, that it flowed out two feet of his fall. If raising the solid dam twelve inches, was an injury to the plaintiff, calling for litigation, or the interposition of arbitrators, surely the placing of any flash-boards thereon was a greater injury, and an equally impòrtant subject for adjustment. And the plaintiff admits this when he alleges, that not the solid dam alone, but both dam and flash-boards flowed out two feet of his fall. Regarding the conflicting claims of the parties at the time this submission was entered into, and each and all of which was in fact the disputes which had arisen between them, and for the amicable adjustment of which this arbitration was agreed upon; and we think it would be hypercritical to adjudge that the word "dam," as used in this submission, means only solid or permanent dam; or that its language was not broad enough to cover, and was not intended to cover, each and every act done by the defendants, relating alike to the permanent and solid dam and temporary or movable flash-boards, the consequence of which was to flow out any part of the fall above, as then claimed by the plaintiff.

Again: it is said the submission calls upon the referees to determine the "fixed height" of the dam, and that, therefore,

they had no authority to adjudicate upon a movable flash-board right. But no such specific issue was submitted. The tenor and substance of the agreement upon this point was, that if the arbitrators determine that said dam can be maintained at its "present or other fixed height," then damages are to be awarded to the plaintiff, to be assessed in the mode indicated. This language is not mandatory, only so far as it relates to the mode in which damages are to be assessed, in a contingency that may or may not arise. If it touches the question of authority, it enlarges rather than limits the power of the arbitrators, since the language implies that they may or may not determine the question of "fixed height."

The award was, that the defendants "have the right to keep up and maintain the cap-log or permanent rolling way of their said dam to the height of the great rock in their pond and no higher, and to keep on said cap-log flash-boards twelve inches wide, at all times except in times of freshet."

The various obstructions the defendants had, from time to time, erected upon this stream, damming up the water and causing it, as is alleged, to flow back upon the lands and water privilege of the plaintiff, and the claim of the defendants that these obstructions were rightfully erected and might be maintained, were the matters in dispute; and the main purpose of the arbitration was to determine, upon the principles of law and equity, whether this claim was well-founded; and if not, what obstructions, in the way of damming up the water for the use of their mill, the defendants could rightfully erect. Construing the submission by its terms and subject matter, and we do not see how we can avoid the conclusion, that it authorized the arbitrators to adjudge as well upon the question of flash-boards, as upon the question of solid dam.

A further objection to the award is, that it is wanting in certainty and finality. It is said that it adjudicates a contingent and conditional flash-board right in this, that it fixes no definite period of time, or depth of water, when the flash-boards may be maintained. That it does not determine the rights of the parties,

or determine them so defectively that the award is incapable of being performed.

The rule no doubt is, that an award should be certain, that is, certain to a common intent, either in terms or by direct reference. Its language should be so unambiguous as to indicate what is awarded, and inform the parties of their rights and liabilities, and that which is awarded should be capable of being performed. If it be awarded that A pay to B $100, this is good; but if it be added, subject to a certain allowance for labor, not fixing the value of the service, then it is bad as uncertain. And so in *Hewitt* v. *Hewitt*, 1 Ad. & E. (N. S.) 111, where the award was, that J should, in a time fixed, pay to a banker named £3,121, and that, within one month thereafter, R should pay to the same banker *such a sum* as would be sufficient to discharge a certain mortgage, the award was avoided.

The cases show, that while the rule as to certainty is not questioned, there has been a seeming contrariety of decision in applying the rule, and it is in reference to this that Jervis, C. J., in *Mays* v. *Cannell*, *infra*, says, the cases upon the subject of awards, "run very wild." In *Stonehewer* v. *Fana*, 6 Ad. & E. (N. S.) 730, where the arbitrators were to award upon the rights of the plaintiff in, and to regulate his enjoyment of, water upon a certain stream in a pure state, and the award was, that the defendant should take all *proper* and *reasonable* precautions to prevent the water from being rendered unfit for the plaintiff's use, directing a mode of filtering it, so as to cleanse it as far as it can be cleansed by the ordinary and most approved process of filtering; the award was held bad for uncertainty, Wightman, J., saying: "an award ought to be so express that there shall be no difficulty or doubt as to the performance." In another leading case upon this point, where the question was one of the title to real estate and how possession should be delivered, and the arbitrators awarded, that the defendant should pull down a brick wall forming an end of a long room which he had erected upon land of the plaintiff's lessor, or so much of it as stands four and a half inches or *thereabout* on the lessor's land and upon a certain wall or fence which divides the property of the lessor from that of the

defendant, Jervis, C. J., held the award sufficiently certain, and in delivering judgment, says that we ought not to struggle to make an award uncertain, and that if upon any reasonable construction the award can be, it ought to be sustained, and that we may reasonably assume that there was a party wall between the property of the plaintiff's lessor and the defendant, and the direction to pull down the wall, or so much thereof as stood upon the land of the plaintiff, as near to the four and one-half inches as could be adjusted, was reasonably certain. *Mays* v. *Cannell*, 15 C. B. 107 (80 E. C. L.)

In *McDonald* v. *Bacon*, 3 Scam. 428, cited by counsel, the award was not only uncertain, but it did not pursue the submission, which called upon the arbitrators to determine, definitely, how much the defendant should lower his dam.

The case of *Lincoln* v. *Whittenton Mills*, 12 Met. 34, also cited, turned mainly upon the point that the award was not binding upon the parties in that suit, and it manifestly lacked both certainty and finality.

It is further objected to the award that it is not *final*, but leaves the rights of the parties undetermined and open to future litigation. It is true, the arbitrators do not determine what height of water upon that stream constitutes a freshet. But an award is not the less *final* because it does not execute itself, or preclude all future controversy between the parties. If an award leaves nothing to be done by either side to carry it into effect but the performance of some mere ministerial act, it cannot be objected to, on the ground of want of finality. An award may not be final, in not adjudicating upon that which is submitted; but if what is submitted be adjudicated, and not left open to future controversy, it is sufficient. It is no objection to an award, that litigation may ensue in enforcing it.

And the terms of an award must be governed, to some extent, by the subject matter. If the right in dispute be in the nature of an *assumpsit*, the award should determine with accuracy what is due. But if the issue be upon conflicting water rights and movable flash-board rights, and how a dam may be harmlessly maintained at stages of water varying at different times of the

day and seasons of the year, it is evident a like degree of certainty in defining the rights of parties is unattainable.

In view of the language of this submission, and of the subject matter, we judge it to have been the purpose of the litigants to invest the arbitrators with equity powers to determine how far, and in what mode, this water power might be most fully and rightfully used by each, without injury or with the least injury to the other.

The question is not, whether the arbitrators determined, by mark or monument, when the flash-boards are to be removed; or, what height of water upon that stream constitutes a freshet; but have they laid down a rule, "regulation" or "direction," uniform and fixed, limiting and establishing, with reasonable certainty, the rights of the parties,—one which may be observed, followed and performed. The term "*freshet*" is a definite term. Its meaning is known. It is not enough that witnesses may differ upon the question of freshet or no freshet. Witnesses differ upon all questions at controversy in courts. It is sufficient if there be a rule, known to the parties, prescribing their rights, and which *may* be obeyed. *Strong* v. *Strong* (*infra*).

Again: it is said the award is founded upon a "*plain mistake in law.*" The rule is, that when parties, in express terms or by plain implication, submit both the law and the facts of a controversy, the decision of the arbitrators is final and conclusive, and the award becomes in the nature of a judgment of a court of the last resort. There is an exception to this rule, when a plain mistake in the law appears on the face of the award. In such a case, the arbitrators undertake to decide according to law, and the award shows they have not so determined. And so of a plain mistake in fact, where the mistake appears upon the face of the award. But such mistake should not only thus appear, but be a mistake so affecting the principle upon which the award is made, and so plain and material, that if the arbitrators had been apprised of it before making their award, they would have awarded differently. Mere error of judgment is no ground for setting aside an award; neither, that the arbitrators have drawn, apparently, wrong conclusions from the facts or evidence.

In this case, the submission referred all questions in dispute relating to the defendants' dam, touching the respective rights of the parties, to the determination of the arbitrators, to be decided upon the principles of law and equity. The submission is broad. We are bound to presume such was the intent of the parties. The arbitrators are to determine, not only what was testified to, but what that which was testified to proved. They were not only to decide the law of the case, but to apply the law to the proof. And more than this : if they saw that a strict application of technical law failed to do complete justice between the parties, taking into view all the circumstances of the case, they had the right, in furtherance of the ends of justice, to invoke the aid of the more flexible, but not less established, rules of equity.

It is admitted by the bill, that the parol agreements therein referred to, relating to the rights of flowage, and the various grants, and the evidence upon the questions of license, were all before the arbitrators. We must presume they considered them all, heartily and intelligently ; that they construed these arguments and grants, weighed the testimony upon the question of license ; examined how far these arguments and grants amounted to a waiver of the provisions of the mill act, and estopped the rights of the defendants. It is not enough that the evidence was not satisfactory to the parties. It is sufficient, under this submission, if it was satisfactory to the arbitrators.

The arbitrators having been made, by the parties, the judges of the law and of the facts and of the equity of the case, and no mistake of law appearing upon the face of the award, and no mistake as to any material fact thus appearing or being admitted by the arbitrators ; and no partiality or corrupt conduct on their part, or misbehavior in the parties being pretended ; and the award being within the terms of the submission fairly construed, and furnishing a rule sufficiently certain to define and limit the rights of the parties, and under which these rights may be enforced ; we see no sufficient reason in the plaintiff's bill for annulling the award, or any part of it.

It is unnecessary to consider the question of "*accident*," by

which, as he alleges, the plaintiff was deprived of a hearing at law, since every ground of exception to the award has been fully and ably presented by counsel under this *demurrer*.

The demurrer, therefore, is sustained, and the bill dismissed with costs.