## PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY

v.

### Joyce M. FLYNN.

### No. 95–70–Appeal.

Supreme Court of Rhode Island.

Dec. 24, 1996.

Jessica L. Papazian–Ross, John McQueeney, Jr., Providence, for Plaintiff.

Joseph R. Muratore, Jr., East Greenwich, Carolyn Ann Mannis, Providence, for Defendant.

### OPINION

LEDERBERG, Justice.

In awarding damages in this underinsured-motorist case, an arbitration panel calculated prejudgment interest on its total award of damages without first having subtracted from the award the amount of a settlement that had been collected by the injured party prior to the arbitration hearing. The plaintiff, Prudential Property and Casualty Insurance Company (Prudential), filed a motion in Superior Court to vacate the award of benefits to the defendant, Joyce M. Flynn (Flynn), claiming that the computation of prejudgment interest was erroneous. The trial justice denied the motion, and Prudential appealed to this Court. We affirm the Superior Court's denial of the motion to vacate, and we reaffirm our longstanding practice of upholding arbitration awards absent extraordinary circumstances.

### Facts and Procedural History

The parties agreed to the following facts for purposes of this appeal. On October 8, 1989, Flynn sustained personal injuries when the automobile that she was driving was struck from behind by a motor vehicle operated by Jorge W. Pimental (Pimental). Pimental's automobile was insured under a liability policy issued by State Farm Insurance Company (State Farm). Flynn pursued a

claim against Pimental and eventually, with Prudential's approval, settled for Pimental's policy limit of $25,000. Flynn then filed claims with Prudential for medical payments and underinsured-motorist benefits and received $410.86 in medical payments from Prudential. The underinsured-motorist claim was submitted to binding arbitration pursuant to a clause in the insurance policy. On December 19, 1994, an arbitration panel determined that defendant had suffered total damages in the amount of $28,910.86. The panel then calculated prejudgment interest on this total amount and arrived at a gross award of $46,835.59. From this figure the panel subtracted the prior $25,000 settlement with State Farm and the $410.86 in medical payments, yielding a net final award of $21,-424.73.

Prudential filed a motion in Superior Court to vacate the award. Prudential did not challenge the arbitrators' finding that defendant suffered $28,910.86 in total damages but argued that the settlement amount and the medical payments should have been deducted from the total damages *before* the computation of prejudgment interest. Under Prudential's calculation, Flynn was entitled to a net final award of $5,670. At a hearing on January 27, 1995, the trial justice denied Prudential's motion. The trial justice ruled that the question of how to calculate prejudgment interest on an award of underinsured-motorist benefits had never been addressed in Rhode Island, that statutory protections against uninsured motorists should be construed liberally, and consequently that the arbitrators had not manifestly disregarded the law of this state. Prudential filed a notice of appeal pursuant to G.L.1956 § 9-24-1.

### Standard of Review

This Court has recognized the limited role of the Judiciary in the arbitration process, *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935, 936 (R.I.1983); *Romano v. Allstate Ins. Co.,* 458 A.2d 339, 341 (R.I.1983), and has pointed out that "[p]arties voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts." *Aetna Casualty &*

*Surety Co. v. Grabbert,* 590 A.2d 88, 92 (R.I. 1991). Accordingly, we are cognizant of the fact that "an arbitration award is the decision of an extra-judicial tribunal which the parties themselves have created and by whose judgment they have mutually agreed to abide." *Jacinto v. Egan,* 120 R.I. 907, 911, 391 A.2d 1173, 1175 (1978).

■ The efficacy of the arbitration process depends, therefore, upon a strong public policy in favor of the finality of arbitration awards. Generally, parties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law. *See Coventry Teachers' Alliance v. Coventry School Committee,* 417 A.2d 886, 889 (R.I.1980) (mere fact that arbitrator misconstrued contract or law affords no basis for striking down award). As long as an arbitration award " 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Jacinto,* 120 R.I. at 912, 391 A.2d at 1176 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960); *Safeway Stores v. American Bakery & Confectionery Workers International Union, Local 111,* 390 F.2d 79, 83 (5th Cir. 1968)). In general, courts look with disfavor on efforts to overturn arbitration awards and thereby frustrate the arbitration process. Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene. *See Grabbert,* 590 A.2d at 92.

■ This policy of finality is reflected in the limited grounds that the Legislature has delineated for vacating an arbitration award:

"(1) Where the award was procured by corruption, fraud or undue means.

"(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

"(3) Where the arbitrators were guilty of misconduct in refusing to postpone the

hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

"(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." G.L.1956 § 10–3–12.

In addition, this Court has held that an arbitration award may be vacated when the arbitrators manifestly disregarded the law or the contract or when the arbitration award was completely irrational. *Berthod Realtors, Inc. v. J.W. Riker–Northern Rhode Island, Inc.*, 636 A.2d 1328, 1328 (R.I.1994); *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 210–11, 376 A.2d 708, 711 (1977). Moreover, this Court "has consistently held that 'the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence.'" *Berthod Realtors, Inc.*, 636 A.2d at 1328 (quoting *Ambrosino v. Bevilacqua*, 118 R.I. 369, 371, 375 A.2d 404, 405 (1977)).

### Computation of Prejudgment Interest

■ The bone of contention in the instant matter was the arbitrators' method of computing prejudgment interest. The General Assembly has provided that prejudgment interest be assessed on awards rendered in civil actions. The relevant statute, G.L.1956 § 9–21–10, states in pertinent part:

"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein. * * * This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."

This Court has held that arbitrators should add prejudgment interest to their awards pursuant to § 9–21–10 unless the parties have specifically agreed otherwise. *Paola*, 461 A.2d at 937.

■ Prudential argued in its motion to vacate that "the arbitrators imperfectly executed their powers so that a mutual, final and definite award was not made and manifestly disregarded the law in applying interest to the total damages without first subtracting the payments made by the tortfeasor and medical payment made under the policy." In support of its position, Prudential cited both the language of the contract and decisions of this Court. The setoff clause in the uninsured-motorist provisions of the insurance policy stated:

"PAYMENTS REDUCED

"Payments will be reduced by any amount payable by persons responsible for the accident. Payments under this part will also be reduced by any amount payable under this policy or by other sources."

In *Margadonna v. Otis Elevator Co.*, 542 A.2d 232 (R.I.1988), the case on which Prudential chiefly relied, this Court interpreted the Joint Tortfeasor Release Statute, G.L. 1956 § 10–6–7, and an earlier version of § 9–21–10 and held that the amount of a settlement with a joint tortfeasor should be deducted from a verdict against a nonsettling joint tortfeasor *before* prejudgment interest is computed. *Margadonna*, 542 A.2d at 235–36.

Prudential conceded that the arbitrators in the case at bar considered *Margadonna* and found it distinguishable. The trial justice reviewed both the language of the contract and this Court's decision in *Margadonna* and concluded that neither provided direction on how to calculate prejudgment interest on an award of underinsured-motorist benefits. The trial justice reasoned:

"[W]here there is no established law in this jurisdiction, as to how [a] setoff can be applied, whether to the eventual determination of damages, plus prejudgment interest, or applied to the original determination of damages, before interest is computed, I can't say that these arbitrators manifestly disregarded the law of the

State. I don't think that Margadonna is analagous [sic] precedent. I think it is plainly distinguishable, for a number of reasons, not the least of which is different language in the [Uniform Contribution among Tortfeasors Act] from the language of the policy.

"Furthermore * * *, because the issue of computation and application of interest to arbitrators['] awards or decisions, * * * could be agreed by the parties beforehand, meaning by that, that the carrier could, in its policies, declare how it intended to handle the matter of pre-award interest[,] I can't say that these arbitrators were in manifest disregard, in either the law or of the policy itself."

The trial justice added that "the uninsured motorists requirements of the General Laws should be construed liberally in favor of the insured party." *See DiTata v. Aetna Casualty and Surety Co.*, 542 A.2d 245, 247 (R.I. 1988) (Legislature's primary purpose in mandating uninsured-motorist coverage was indemnification for insured's loss rather than defeat of claim).

After carefully examining the insurance contract and our prior case law, we conclude that the trial justice did not err in denying Prudential's motion to vacate the arbitration award. The insurance policy in this case offered no guidance on how to compute prejudgment interest, and none of our prior decisions on prejudgment interest addressed the uninsured-motorist context. The arbitrators thus were free to fashion the remedy they deemed most appropriate in the circumstances.

We reach our decision today on the basis of this Court's longstanding practice of upholding arbitration awards in the absence of extraordinary circumstances. We emphasize that the interest computation giving rise to this dispute between private parties was performed by an arbitration panel insulated from the normal appellate review for errors of law. Were this matter initially decided by a trial justice in the Superior Court, we would not be bound by § 10-3-12 and the policy favoring finality in arbitration, and we would be able to construe and apply the relevant statutes and case law. In any case,

we express no opinion on the merits of the underlying dispute regarding the computation of prejudgment interest on an award of underinsured-motorist benefits.

For the foregoing reasons, we deny and dismiss the plaintiff's appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.