NORTH PROVIDENCE SCHOOL COMMITTEE

v.

The **NORTH PROVIDENCE FEDERATION OF TEACHERS, LOCAL 920, AMERICAN FEDERATION OF TEACHERS.**

No. 2007–156–A.

Supreme Court of Rhode Island.

April 23, 2008.

Kevin McAllister, Esq., Providence, for Plaintiff.

Marc B. Gursky, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, the North Providence School Committee (school committee), appeals to this Court from the entry of judgment confirming an arbitral award in favor of the defendant, the North Providence Federation of Teachers, Local 920, American Federation of Teachers (union).

This case came before the Supreme Court for oral argument on January 22, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we deny the appeal and affirm the judgment of the Superior Court.

## Facts and Travel

The central issue in this case revolves around the school committee's elimination of the composition period for English teachers at North Providence High School, which elimination the union contended was violative of the collective bargaining agreement between the parties.

From at least 1971 until 2004, English teachers at North Providence High School were assigned a fifty-minute composition period as part of their academic schedule. That period was assigned to the English teachers on a three to four days per week basis. The purpose of the composition period appears to have been to give the English teachers time in which to correct papers and work individually with students on the development of their writing skills.

In the Summer of 2004, the superintendent of schools informed the president of the union that she would be recommending to the school committee that, for budgetary reasons, the composition period should be discontinued. The superintendent informed the union president that one high school English teacher had retired and that the contract of another high school English teacher had not been renewed. Rather than fill those two vacant positions, the superintendent explained that, as a means of reducing monetary expenditures, she intended to recommend that the school committee eliminate the composition period and then redistribute the existing En-glish classes among the remaining English teachers.

The union president urged the superintendent not to make such a recommendation to the school committee. Nonetheless, despite the union's objection, the superintendent proceeded to make the recommendation. Shortly thereafter, the school committee accepted the superintendent's recommendation and voted to eliminate the composition period.

Subsequently, on July 20, 2004, counsel for the school committee sent the president of the union a letter responding to the union's contention that "a past practice exists relative to provision of composition times for English teachers * * *." The July 20 letter informed the union that the school committee denied that any such past practice existed. The school committee, through its counsel, then went on to state that, even if the provision of composition periods for English teachers constituted a past practice, the July 20 letter should be viewed as "notice to the Union that [the school committee] no longer intends to be bound by such past practice," and the letter cited G.L.1956 § 28–9–27 as authority in support of the school committee's position.[1]

Thereafter, pursuant to Article IV of the collective bargaining agreement, the union filed a grievance, in which it claimed that the elimination of the composition period violated the collective bargaining agreement.[2] In due course, the grievance was

---

1. General Laws 1956 § 28–9–27(e), as amended by P.L.2000, ch. 412, § 1, reads as follows:

"Any party to a collective bargaining agreement may provide written notice to the other party that it no longer intends to be bound by a past practice. This notification must describe the past practice and set forth the effective date of the termination of the practice. Neither party is obligated to follow the practice thirty (30) days following this notification."

This was the way in which said statute read at the relevant time. We note that the statute has since been amended. See P.L.2007, ch. 517, § 1. It should go without saying that the 2007 amendment has no bearing on the case at bar.

2. The pertinent collective bargaining agreement was effective from September 1, 2002 to August 31, 2005.

considered by the superintendent and she denied it. The union then filed a petition for arbitration; the matter was then submitted to arbitration under the aegis of the American Arbitration Association, pursuant to one of the provisions in Article IV of the collective bargaining agreement.[3]

An arbitration hearing was held on July 21, 2005. The pertinent question submitted by both parties to the arbitrator was worded as follows: "Did the School Committee's action in eliminating the composition period for high school English teacher[s] in the 2004–2005 school year violate the [collective bargaining agreement]?" During the hearing, both the union president and the superintendent testified. The union's principal contention was that the composition period amounted to a past practice and that its elimination violated the "savings clause" found in Article XIII of the collective bargaining agreement.[4] The school committee, which emphasized the fiscal advantages of the elimination, argued that the composition period was not a past practice; the school committee further argued that, even if the composition period were considered to fall within the definition of a past practice, the July 20 letter properly terminated the practice in accordance with the provisions of § 28–9–27(e). In addition, the school committee contended, in rather summary fashion, that pursuant to its broad statutory authority with respect to education as set forth in Title 16 of the General Laws, the school committee was vested with the au-

thority to eliminate the composition period. The school committee further argued that that statutorily derived authority could not be bargained away in a collective bargaining agreement.

On December 12, 2005, the arbitrator issued his Opinion and Award, in which he concluded: (1) that the existence of the composition period amounted to a past practice and (2) that the elimination of the composition period violated Article XIII of the collective bargaining agreement. The arbitrator found that "[t]he unquestioning continuation of the composition period— including the routine scheduling of such and thereafter posting these schedules, amounted to a mutual expectation that such would continue."

With respect to the school committee's Title 16 argument, the arbitrator concluded that the "elimination of the composition period was a proper subject of negotiation between the School Committee and the Union and is therefore subject to the restrictions imposed under the parties' Agreement." In so concluding, the arbitrator found that the decision to eliminate the composition period was "based on money and the ability to cover the teaching load." The arbitrator opined that such decisions "are not educational policy decisions, [but rather] are work load decisions," which, in the arbitrator's words, "are always subject to negotiation."

The arbitrator also analyzed whether the school committee had properly terminated the composition period in accordance

---

3. Article IV, section 1, step 4, of the collective bargaining agreement provides in pertinent part:
"The grievance shall be referred, at the request of either the Employer or the Union, to an Arbitrator selected pursuant to the rules of the American Arbitration Association. * * * The settlement of any dispute at any stage of the foregoing procedures or the decision of the Arbitrator of

any such dispute shall be final and binding upon all parties concerned."

4. Article XIII of the collective bargaining agreement (which Article we sometimes refer to as "the savings clause") provides: "All existing benefits, practices and policies not covered by this agreement shall continue in effect unless changed by mutual consent of the parties."

with § 28–9–27(e).[5] After examining the statute, the arbitrator found that "by making a claim under Article XIII [the savings clause], the Union took the past practice outside of § 28–9–27 and therefore the School Committee's action terminating such was null and void." Accordingly, the arbitrator concluded, the school committee violated Article XIII of the collective bargaining agreement by eliminating the composition period without the consent of the union.[6]

For the above-summarized reasons, the arbitrator ruled in favor of the union.[7]

Subsequently, on January 4, 2006, the school committee filed in the Superior Court a petition to vacate the arbitral award, alleging that the arbitrator exceeded his powers and imperfectly executed them. In addition, the school committee contended that the award was "based upon a manifest disregard of contractual provisions" and that the arbitrator had reached "a completely irrational result." That same day, the school committee also filed a motion to stay the award, in which motion it argued that implementation of the award would "cause the District to operate in a deficit" and would "be disruptive to the education process and * * * [would] unnecessarily and negatively impact continui-

ty of educational instruction * * *." The union objected to both the petition to vacate and the motion to stay, and it filed a cross-motion seeking confirmation of the arbitral award.

On March 6, 2006, a justice of the Superior Court denied the school committee's motion for a stay. Subsequently, on April 17, 2006, a hearing regarding the motion to vacate the arbitral award was held before that same justice. In confirming the arbitral award and denying the school committee's motion to vacate, the hearing justice concluded:

"Here I believe the arbitrator's decision was thorough and careful in its analysis of the facts and the law. What is involved here is not some broad managerial right regarding educational policy, but rather a working condition that had existed for more than a couple of decades; and past practices have not been eliminated by any statute, nor may they be unilaterally abandoned, especially in the situation here where there is a savings clause."

The order confirming the arbitral award was entered on December 21, 2006; the school committee filed a notice of appeal on December 28, 2006.[8]

5. See note 1, supra.

6. We understand the arbitrator to have reasoned that, by agreeing to Article XIII in the collective bargaining agreement, the school committee contractually bound itself not to invoke the protections of § 28–9–27(e) with respect to the elimination of past practices.

7. In his Opinion and Award, the arbitrator declared that the appropriate remedy would be the following:
"The School Committee shall determine the number of composition periods each English teacher at the high school would have had, had they been assigned a composition period for the school year 2005–2006. * * * [T]he School Committee shall then provide an unassigned composition period

to compensate the high school English teacher for each lost composition period. If at the end of the school year, a high school English teacher has not received the number of composition periods he or she would have been entitled to during school year 2005–2006, the School Committee shall compensate the teacher on a pro-rata basis for all composition periods for which they are entitled."

8. We note that final judgment was not entered until May 1, 2007. However, we have previously held that a prematurely filed notice of appeal in such circumstances is not a bar to review by this Court. See, e.g., In re Brooklyn M., 933 A.2d 1113, 1121 n. 15 (R.I.2007); McBurney v. The GM Card, 869 A.2d 586, 589 n. 3 (R.I.2005).

On appeal to this Court, the school committee argues that the arbitrator exceeded his powers when he found that a past practice existed between the parties and that the unilateral termination of same violated the collective bargaining agreement. The school committee's argument is multi-faceted; the school committee contends: (1) that the union failed to prove by clear and convincing evidence that a past practice existed; (2) that the arbitrator incorrectly relied on the savings clause in finding the existence of a past practice; (3) that, even if a past practice existed, it was properly terminated in accordance with § 28–9–27(e); (4) that the school committee and the superintendent have a statutory duty, pursuant to Title 16 of the General Laws, to manage and maintain the education system, and such duty cannot be compromised by a past practice; and (5) that the arbitrator exceeded his authority by reviewing a matter that constituted a non-arbitrable educational policy decision.

The union responds by pointing to this Court's quite limited standard of review with respect to arbitral awards; it contends that the arbitrator's decision was a rational result based upon a passably plausible interpretation of the collective bargaining agreement and a rational interpretation of state law. The union also argues that the arbitrator did not exceed his authority in making his determination because the decision to eliminate the composition period did not pertain to an educational policy, but rather to the terms and conditions of employment, which are subject to collective bargaining.

## Standard of Review

The authority of the courts in this jurisdiction to review an arbitral award is statutorily prescribed and is limited in nature. *See Metropolitan Property and Casualty Insurance Co. v. Barry,* 892 A.2d 915, 918 (R.I.2006); *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I.2002); *Rhode Island Council 94, AFSCME, AFL–CIO v. State,* 714 A.2d 584, 587 (R.I.1998); *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections,* 707 A.2d 1229, 1234 (R.I.1998). Due to the public policy favoring the finality of arbitration awards, such awards enjoy a presumption of validity. *Pierce v. Rhode Island Hospital,* 875 A.2d 424, 426 (R.I.2005); *see also Prudential Property and Casualty Insurance Co. v. Flynn,* 687 A.2d 440, 441 (R.I. 1996).

Pursuant to our case law, "an arbitration award may be overturned if the award was irrational or if the arbitrator manifestly disregarded the law." *Purvis Systems, Inc.,* 788 A.2d at 1115. This Court has emphasized, however, that a manifest disregard of the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westminster Construction Corp. v. PPG Industries, Inc.,* 119 R.I. 205, 211, 376 A.2d 708, 711 (1977) (internal quotation marks omitted); *see also Purvis Systems, Inc.,* 788 A.2d at 1115. A manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it. *Purvis Systems, Inc.,* 788 A.2d at 1115.[9]

---

**9.** Judicial deference to arbitral awards has long been a characteristic of the American legal system. *See, e.g., Burchell v. Marsh,* 58 U.S. 344, 349, 17 How. 344, 15 L.Ed. 96 (1854) ("If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact."); *Fudickar v. Guardian Mutual Life Insurance Co.,* 62 N.Y.

In sum, we will uphold an arbitral award if the award draws its essence from the contract in question and is based on a "passably plausible" interpretation of the contract. *Purvis Systems, Inc.,* 788 A.2d at 1115 (internal quotation marks omitted); *see Jacinto v. Egan,* 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978).

## Analysis

After considerable reflection and review of the pertinent authorities, it is our conclusion that the limited scope of our review of arbitral awards prevents us from disturbing the arbitrator's determination that the composition period amounted to a past practice and that, by eliminating that practice, the school committee violated the collective bargaining agreement.[10] The arbitrator gave the requisite degree of consideration both to the relevant provisions of the collective bargaining agreement and to the applicable provisions of state law, including Title 16 of the General Laws. The record further reveals that the arbitrator gave due regard to the testimony and other evidence presented at the hearing as well as to the briefs submitted to him by the parties; we have no reason to doubt that he adequately evaluated and weighed the evidence and the legal arguments in making his determination. We

conclude that in rendering his decision the arbitrator neither manifestly disregarded the law nor reached an irrational conclusion; the decision was a passably plausible interpretation of the collective bargaining agreement. *See Purvis Systems, Inc.,* 788 A.2d at 1115.

First, in determining that the composition period constituted a past practice, the arbitrator appropriately looked at each of the five factors set forth in § 28–9–27(b).[11] He rejected the school committee's assertion that the composition period had not been accepted by both parties, and he concluded that the union had established, by clear and convincing evidence, the existence of a long-standing practice, which had been accepted by eight superintendents for more than thirty years. In so deciding, the arbitrator neither exceeded his powers nor manifestly disregarded the law.

Moreover, it is our belief that the arbitrator's interpretation of the savings clause (found in Article XIII of the collective bargaining agreement) is also passably plausible. As the arbitrator noted, the savings clause was meant to preserve past practices, and he went on to state that to decide otherwise "would effectively wipe out every savings clause or preservation of

---

392, 400 (1875) ("[A]wards will not be opened for errors of law or fact on the part of the arbitrator.").

10. Although it is possible that one or more of the members of this Court might not have reached the same result or engaged in the same process of reasoning as did the arbitrator in this case, the operative standard of review narrows the judicial role to that of determining whether the result reached by the arbitrator was irrational or constituted a manifest disregard of the law. *Purvis Systems, Inc. v. American Systems Corp.,* 788 A.2d 1112, 1114 (R.I.2002); *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections,* 707 A.2d 1229, 1234 (R.I. 1998). Given these demanding criteria, we

are unable to say that the arbitral decision in this case should not be allowed to stand.

11. Pursuant to § 28–9–27(b):

"A party claiming the existence of a past practice shall be required to prove by clear and convincing evidence that the practice;
 "(1) is unequivocal;
 "(2) has been clearly enunciated and acted upon;
 "(3) is readily ascertainable;
 "(4) has been in existence for a substantial period of time;
 "(5) has been accepted by representatives of the parties who possess the actual authority to accept the practice."

practices clause * * *." As such, the arbitrator rationally concluded that the savings clause expressed the agreement of the parties that past practices would be allowed to continue until such time as they might be changed by the mutual consent of the parties.

Finally, it is our view that the arbitrator did not act in manifest disregard of state law when he found that the school committee's decision to terminate the composition period did not constitute an educational policy decision, but rather was a workload decision and therefore constitutes a term and condition of employment. While school committees have exclusive statutory authority pursuant to Title 16 over matters of management and educational policy, unions representing teachers are statutorily entitled to negotiate over matters that directly affect the work and welfare of their members and school committees are bound to negotiate with them. *See* G.L.1956 chapter 9.3 of title 28 (the Certified School Teacher's Arbitration act, frequently referred to as the "Michaelson Act"). The arbitrator found that the decision to eliminate the composition period was based on budgetary and teaching load concerns— the latter being matters affecting the terms and conditions of employment— which he considered to be arbitrable; he correspondingly found that the composition period decision did not constitute a

matter of educational policy, which would be committed to the sole discretion of the school committee. We conclude that there has been no sufficient showing that, in making this decision, the arbitrator manifestly disregarded state law.

## The Narrowness of the Issue Before Us

■ It is important to emphasize that this opinion should not be read as endorsing any sort of radical departure from the stark and clear language of Title 16. The forcefulness of the language employed in G.L.1956 § 16–2–9(a) is especially noteworthy:

> *"The entire care, control, and management of all public school interests* of the several cities and towns shall be vested in the school committees of the several cities and towns." (Emphasis added.)

We have acknowledged that this legislative mandate must be reconciled with other statutory provisions that authorize resort to arbitration in some circumstances, but we have never suggested that the important mandate set forth in Title 16 has in any sense become a dead letter.[12] To the contrary, we remain keenly aware that Title 16 is an immensely important part of the General Laws.

12. It goes without saying that statutory duties that are specifically imposed upon school committees by law (and activities closely associated therewith) may not be made the subject of the arbitral process. *See, e.g., Pawtucket School Committee v. Pawtucket Teachers' Alliance,* 652 A.2d 970, 972 (R.I.1995) ("We have stated clearly that while the school committee can negotiate many items with the professional and nonprofessional employees of the system, it cannot bargain away statutory powers and responsibilities."); *see also Department of Corrections v. Rhode Island Brotherhood of Correctional Officers,* 867 A.2d 823, 829 (R.I. 2005); *Woonsocket Teachers' Guild, Local* 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 838 (R.I.2001); *State Department of Children, Youth and Families v. Rhode Island Council 94,* 713 A.2d 1250, 1256 (R.I. 1998); *State Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94,* 692 A.2d 318, 319 (R.I.1997); *Vose v. Rhode Island Brotherhood of Correctional Officers,* 587 A.2d 913, 915 (R.I.1991).

Even in the absence of such specific statutory mandates, however, school committees are vested with a plethora of powers and responsibilities that relate to the essence of the educational mission that may not be bargained away.

In enacting Title 16, the General Assembly delegated to the school committees of the several cities and towns expansive powers over education; it spoke in extraordinarily broad terms when it vested authority over the public schools in the state's several school committees.[13] It is true that the sweeping language of Title 16 must be read in harmony with the provisions of the Michaelson Act; it is nonetheless a basic rule of law that school committees are not at liberty to bargain away their powers and responsibilities with respect to the essence of the educational mission. In our view, in this case we are figuratively standing on the banks of the Rubicon: a very strong argument can be made that a decision about having or not having a composition period for teachers of English is directly related to the essence of the educational mission and is therefore non-arbitrable.

It is because the school committee in this case opted to ground the abolition of the composition period primarily on a fiscal rationale that we have come to conclude that the arbitral decision need not be vacated. If the school committee had justified the elimination of the composition period on the primary basis that said elimination was undertaken for the purpose of improving the education of North Providence High School students in English and if the school committee had explained its thinking in that regard in a cogent manner, it is entirely possible that we would have considered that administrative decision to be non-arbitrable. *See Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee*, 770 A.2d 834, 838 (R.I.2001).

### Conclusion

We review arbitral awards under an exceptionally deferential standard as a means of ensuring that parties may benefit from arbitration as a relatively informal and expedient alternative to litigation in the court system. In the instant case, the school committee has not demonstrated that the arbitrator exceeded his powers or manifestly disregarded the law.

Therefore, mindful of the presumption in favor of the validity of arbitral awards, we deny the appeal and affirm the judgment of the Superior Court. The papers in the case may be remanded to the Superior Court.

**13.** It is noteworthy that the Rhode Island Constitution expressly imposes upon the General Assembly the duty of promoting public education. Article 12, section 1, of the Constitution reads in pertinent part as follows:

"The diffusion of knowledge, as well as of virtue among the people, being essential to the preservation of their rights and liberties, it shall be the duty of the general assembly to promote public schools * * * and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education * * *."

The language from Title 16 that is quoted in the text reflects the General Assembly's delegation of that constitutionally derived duty to the school committees of the several cities and towns.