DECISION
This action concerns the validity of an arbitration decision that interpreted a commercial lease between Providence and Worcester Railroad Company ("PW") and Pawtucket Transfer Operations, LLC ("PTO") as requiring PTO to pay PW the Annual Car Load Guarantee Fee for the years of 2005, 2006, and 2007 in addition to $4,000 per month in Base Rent.
For the reasons set forth in this decision, this Court finds that the Arbitrator did not exceed his powers by interpreting the lease as requiring PTO to pay the Annual Car Load Guarantee Fee. Also, the Arbitrator did not manifestly disregard the law in finding that the parties reached an oral modification of the lease. Accordingly, this Court denies PTO's motion to vacate the Arbitration Award and grants PW's motion to confirm it.
 FACTS AND TRAVEL
PW is a regional freight railroad that operates in Massachusetts, Connecticut, Rhode Island, and New York. PTO operates a refuse transfer station to transport waste products to landfills and treatment facilities. TransLoad America, Inc. ("TransLoad"), a New Jersey *Page 2 
corporation, is a member of and investor in PTO. PW owns a parcel of land abutting its tracks in Pawtucket, Rhode Island (the "Property"). PTO sought to use the Property as a rail terminal for transporting solid waste to landfills outside Rhode Island.
On August 31, 2004, PW and PTO entered into a commercial lease with respect to the Property. The rental stream under the Lease was tied to the occurrence of the "Transportation Commencement Date" set forth in Section 4 of the Lease. See Lease § 4 at 4-5. Before the Transportation Commencement Date, which would occur as "Tenant (PTO) begins moving cars under that certain Transportation Agreement to be entered into between Landlord and Tenant," the Lease obligated PTO to pay Base Rent in the amount of $13,300 per month. See id. at 4. After the Transportation Commencement Date, the Lease obligated PTO to pay PW "(a) $4,000 per month, which shall be credited against the Annual Car Load Guarantee Fee at the end of each Lease Year and (b) in lieu of Base Rent during the term of this Lease a fee equal to $200 per car to the extent that Tenant does not have a minimum number of cars each year." Id.
During the term of the Lease, PTO never moved any cars because the City of Pawtucket refused to grant it the necessary approvals for construction of its facilities and operation on the Property. In late 2004, PTO subleased the Property to Boston Railway Terminal ("BRT") to use the Property as a rail terminal to move steel by railcar. BRT shipped 121 loaded railroad cars in 2005, 132 cars in 2006, and 92 cars in 2007. It is undisputed that PW billed PTO and PTO paid PW $4,000 per month in Base Rent from December 2004 through November 2007. PTO, however, did not pay the monthly Base Rent of $4,000 for December 2007 and January 2008, in the total amount of $8,957.72. In March 2007, in addition to Base Rent, PW asked PTO to pay the Annual Car Load Guarantee Fee for the years of 2005 and 2006. In January 2008, PW asked PTO to pay for the year 2007. PTO, however, refused to pay. The total amount of the *Page 3 
Annual Car Load Guarantee Fee unpaid for the years of 2005, 2006, and 2007 was $326,609.73. In addition, PTO refused to pay real estate taxes on the Property in the amount of $27,807.18, as required by Section 6 of the Lease. See id. at 5. The total amount that PTO failed to pay to PW was $363,374.63.
On January 28, 2008, PW and PTO went to Arbitration before Arbitrator Bulman. At Arbitration, the parties disputed whether they had reached an oral agreement regarding the sublease of the Property to BRT and how much rent PTO should pay to PW after the Transportation Commencement Date under the Lease. The most critical issue for the Arbitrator to determine was whether the Lease obligated PTO to pay the Annual Car Load Guarantee Fee for 2005, 2006, and 2007 in addition to the $4,000 monthly fee. On March 20, 2008, the Arbitrator issued an Arbitrator's Award and Decision finding that PTO breached the Lease by failing to pay the Annual Car Load Guarantee Fee for the years of 2005, 2006, and 2007, the monthly Base Rent of $4,000 for December 2007 and January 2008, and real estate taxes on the Property. The total amount that PTO failed to pay PW was $363,374.63. See Arbitration Award at 9-10. The Arbitrator also found that, although PTO and PW never entered into a formal written "Transportation Agreement," the parties orally agreed that a) the Transportation Commencement Date was December 2, 2004; b) the Lease payment requirements shifted from Base Rent to the Lease's calculated payment scheme; c) BRT's movement of cars would be counted toward the Annual Car Load Guarantee Fee; and d) PTO would consent and allow the sub-tenancy of BRT. See id. at 7. Finally, the Arbitrator awarded PW $383,206.65, including interest through the date of the Arbitration Award. See id. at 17.
On April 22, 2008, Plaintiff PW moved to confirm the Arbitration Award and to enter final judgment pursuant to R.I. Gen. Laws § 10-3-11, claiming that (1) it brought its motion *Page 4 
within one year after the date of the Arbitration Award as required by the statute; and (2) that the Arbitration Award had not been vacated or modified by the Court and hence was still in full force and effect. Thereafter, on May 1, 2008, Defendant PTO filed a motion to vacate the Arbitration Award pursuant to R.I. Gen. Laws § 10-3-12, arguing that (1) the Arbitrator exceeded his powers by rewriting the lease through his manifest disregard of its explicit contractual provisions; and (2) the Arbitrator understood the law of oral contract modification but manifestly disregarded that law in crafting the Arbitration Award. PW objected to this motion, arguing that this Court should not vacate the Arbitration Award because the Award draws its essence from the Lease in question and is based on a "passably plausible" interpretation of the Lease.
 STANDARD OF REVIEW
By statute, this Court must confirm an arbitration award if (1) a party to the arbitration applies to the court for an order of confirmation within one year after the date of the arbitration award; and (2) the award has not been vacated, modified or corrected as prescribed in §§ 10-3-12 — 10-3-14. R.I.G.L. § 10-3-11.
R.I. Gen. Laws § 10-3-12 outlines the grounds upon which a court may vacate an arbitration award. It provides, in pertinent part, that the court must vacate the award when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Id. § 10-3-12 (4). Based on the public policy favoring the finality of arbitration awards, such awards enjoy a presumption of validity, and the role of the judiciary in the arbitration process is "extremely limited."North *Page 5 Providence School Committee v. The North Providence Federation ofTeachers, Local 920, American Federation of Teachers., 945 A.2d 339, 347
(R.I. 2008).
Under Rhode Island case law, an arbitration award may be overturned if the award was irrational or if the arbitrator manifestly disregarded the law. Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1114
(R.I. 2002). A manifest disregard of law requires a showing of (1) "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law,"Westminster Construction Corp. v. PPG Industries, Inc., 376 A.2d 708,711 (R.I. 1977); or (2) evidence that an arbitrator understands and correctly articulates the law, but then proceeds to disregard it.Purvis Systems, Inc., 788 A.2d at 1115. The Court must uphold an arbitration award if the award "draws its essence" from the contract in question and is based on a "passably plausible" interpretation of the contract. North Providence School Committee, 945 A.2d at 345
(citing Purvis Systems, Inc., 788 A.2d at 1115).
 ANALYSIS
This Court first will address Defendant PTO's motion to vacate the Arbitration Award. PTO initially argues that the Court should vacate the Arbitration Award because the Arbitrator exceeded his powers by rewriting the Lease through his manifest disregard of its explicit contractual provisions. This Court disagrees.
PTO claimed at Arbitration that, absent a Transportation Agreement and the actual movement of cars by PTO itself, the Transportation Commencement Date did not occur and, therefore, the Annual Car Load Guarantee Fee obligation never arose. See Arbitration Award at 12. At the same time, however, PTO argued that as of the "stipulated" Transportation Commencement Date, its monthly Base Rent obligation changed from $13,300 to $4,000 without *Page 6 
any corresponding Annual Car Load Guarantee Fee obligation. See id. In the Award, the Arbitrator found that "the Lease unambiguously requires either the Base Rent ($13,300 per month) or the Annual Car Load Guarantee Fee, not a mixture of both as PTO argues" and, thus, PTO "cannot have it both ways." See id. PTO argues that this finding ignores the Lease which states as follows:
 Following the occurrence of the Transportation Commencement Date, or any full calendar month during which Tenant does not move any cars under the Transportation agreement, Tenant shall pay to Landlord, in arrears, Base Rent for such month.
See Lease § 4(b) at 4. PTO contends that the Lease provides for a "mixture" of Base Rent and the Annual Car Load Guarantee Fee in a situation where the Transportation Commencement Date has occurred but PTO is unable to move any cars. The "mixture," according to PTO, is that in the months when PTO moves cars, the Annual Car Load Guarantee Fee is due, and in those months when PTO does not or cannot move cars, Base Rent of $4,000 is due.
The Arbitrator's finding that the Lease required PTO to pay PW $4,000 per month in Base Rent and the Annual Car Load Guarantee Fee after occurrence of the Transportation Commencement Date is a "passably plausible" interpretation of the Lease and "draws its essence" from the contract. See North Providence School Committee, 945 A.2d at 345 (R.I. 2008). The Arbitrator gave the requisite degree of consideration to Section 4 of the Lease, finding that after the Transportation Commencement Date, Base Rent decreased from $13,300 to $4,000 per month and "the obligation to pay $4,000 per month was a continuing obligation of PTO; annually, the $4,000 per month payments would be credited against the calculated Annual Car Load Guarantee Fee." See Arbitration Award at 12. Section 4(b) provides, in pertinent part, as follows: *Page 7 
 Beginning on the Transportation Commencement Date, Tenant shall pay to Landlord (a) $4,000 (subject to increases on the same basis as increases in amounts payable pursuant to the Transportation Agreement) per month, which shall be credited against the Annual Car Load Guarantee Fee (as hereinafter defined) at the end of each Lease Year and (b) in lieu of Base Rent during the term of this Lease a fee (the "Annual Car Load Guarantee Fee") equal to $200 per car (subject to increases on the same basis as increases in amounts payable pursuant to the Transportation Agreement) to the extent that Tenant does not move a minimum number of cars each year (the "Annual Car Load Guarantee").
See Lease § 4(b) at 4. In considering that statutory provision, it is "passably plausible" to interpret the Lease as imposing on PTO an obligation to pay Base Rent even when PTO is unable to move any cars and to pay the Annual Car Load Guarantee Fee if PTO does not move a minimum number of cars each year. Id. Therefore, the Arbitrator did not manifestly disregard the language of the Lease and did not exceed his powers in interpreting and applying it.
Defendant PTO next argues that the Arbitrator understood the law of oral contract modification but manifestly disregarded that law in the Award because he found that the parties had reached an oral modification of the Lease even though there was no evidence of mutual assent to the modification. This Court disagrees.
Under Rhode Island law, parties to a written contract may modify its terms by a subsequent oral agreement. MBT Constr. Corp. v. KelhenCorp., 432 A.2d 670, 674 (R.I. 1981). Parties may modify a contract in writing, orally or impliedly through their actions. Fondedile, S.A. v.C.E. Maguire, Inc., 610 A.2d 87, 98 (R.I. 1992). To be legally effective, a party claiming an oral modification of contract must show evidence of mutual assent to the essential terms of the modification and adequate consideration. Bourg v. Bristol Boat Co., 705 A.2d 969, 971
(R.I. 1998) (citing Fondedile, 610 A.2d at 92).
PTO contends that the Arbitrator made a critical error in finding that the parties had reached an oral agreement, subsequent to the Lease, that a) the Transportation Commencement *Page 8 
Date was December 1, 2004; b) the Lease payment requirements shifted from Base Rent to the Lease's calculated payment scheme; c) BRT's movement of cars would be counted toward the Annual Car Load Guarantee Fee; and d) PTO consented to BRT as a subtenant. See Arbitration Award at 7. PW offered one witness, Christopher Guzzi, an employee of PW, who testified about his conversation with Jim Howarth, an employee of TransLoad which is a member of and investor in PTO, regarding their agreement that the cars moved by BRT would be counted against the Annual Car Load Guarantee. PTO did not offer any evidence to counter this testimony.
The Arbitration Award reveals that the Arbitrator gave due regard to the testimony of Guzzi and other evidence that PW presented at the Arbitration. There was sufficient evidence of PTO's actions from which its assent to the oral modification could be implied. SeeFondedile, 610 A.2d at 92. PTO actively sought to sublet the Property to BRT in late 2004. PTO, for example, did not object, but agreed, to PW's notice that the Transportation Commencement Date began on December 1, 2004. More importantly, PTO paid the reduced Base Rent of $4,000 from January 2005 through November 2007. This evidence sufficiently supports the Arbitrator's finding that PW and PTO reached an oral modification of their Lease agreement with both parties assenting to that modification. In addition, PTO failed to provide any evidence refuting Guzzi's testimony about the oral agreement between PW and PTO. Therefore, in rendering the Award, the Arbitrator did not manifestly disregard, but adequately understood and applied the law of oral contract modification.
Defendant PTO also argues that PW has judicially admitted that Base Rent is $4,000. PW does not contest this argument. Rather, PW contends, and the Arbitrator appropriately found, that the Lease obligated PTO to pay not only monthly Base Rent ($4,000) but also the *Page 9 
Annual Car Load Guarantee Fee because PTO, through its subtenant BRT, failed to move a minimum number of cars in each of the relevant years.
 CONCLUSION
Accordingly, this Court denies PTO's motion to vacate the Arbitration Award. As PW timely filed a motion to confirm the Arbitration Award under R.I.G.L. § 10-3-11 and as the Award has not been vacated, modified or corrected under R.I.G.L. §§ 10-3-12, 10-3-13 or 10-3-14, this Court, pursuant to the dictates of § 10-3-11, grants PW's motion to confirm the Award. Judgment shall enter in favor of PW in accordance with the Arbitration Award dated March 20, 2008. Counsel shall confer and submit to this Court forthwith for entry agreed upon forms of order and judgment that are consistent with this Decision.