**Supreme Court**

No. 2013-191-Appeal.
(PM 12-4060)

Berkshire Wilton Partners, LLC      :

v.      :

Bilray Demolition Co., Inc.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Berkshire Wilton Partners, LLC　　　　:

v.　　　　　　　:

Bilray Demolition Co., Inc.　　　　:


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant Bilray Demolition Co., Inc. (Bilray)

appeals from a Superior Court judgment[1] granting the motion of the plaintiff Berkshire Wilton

Partners, LLC (Berkshire) to vacate an arbitration award.  This case came before the Supreme

Court on May 8, 2014 pursuant to an order directing the parties to appear and show cause why

the issues raised in this appeal should not be summarily decided.  After considering the parties'

written submissions and oral arguments, we are satisfied that cause has not been shown.  For the

reasons set forth below, we vacate the judgment of the Superior Court.

**I**

**Facts and Travel**

General contractor Berkshire entered into an agreement with subcontractor Bilray to

perform work on a project located in Bristol, Rhode Island.[2]  A dispute arose between the parties

---

[1] Although the relevant statute, G.L. 1956 § 10-3-12, refers only to an "order" vacating an arbitration award, both an order and a judgment entered in this case.

[2] The facts in this section were culled from the arbitrator's decisions and plaintiff's complaint, as well as the parties' briefs and appendices.

when Berkshire issued Bilray a notice of termination in April 2010. Pursuant to the agreement, the parties submitted the dispute to arbitration.

Both parties submitted claims to the arbitrator for monetary damages. In particular, Berkshire sought to recover completion costs from Bilray. Bilray, in turn, requested the balance on the contract price, which totaled $112,240, and/or damages for additional work it had completed on the project.

Berkshire objected to Bilray's claims and sought to have them dismissed on the grounds that Bilray had signed a waiver and release of all claims for labor, materials, and work performed prior to March 25, 2010.[3] The release upon which Berkshire relied contains the following relevant provisions:

> "3. That prior to the date thereof, [Bilray] has received payment in full for, and has fully satisfied, except as noted below, all debts and obligations incurred in the performance of the work on the project (including without limitation all [Bilray's] and subcontractor debts for labor, materials, supplies, rentals, insurance, utilities, permits, taxes, pensions, benefits, Social Security (hereinafter 'Work Debts') through the 16th day of March 2010. [Bilray] hereby forever waives all claims, suits, demands, actions or lien rights for same and agrees to indemnify, defend and hold harmless the premises and Owner from and against all liens, claims, court actions, losses, or damages of whatever kind asserted by whomever arising out of the work performed through the date set forth in this paragraph.

> "4. That [Bilray] hereby submits a requisition dated this 25th day of March 2010 for payment of all Work Debts, labor and materials furnished through the 25th day of March 2010 in the amount of $38,280.00 * * * and that upon receipt of said payment, which receipt is hereby acknowledged for check # 19267, [Bilray] shall have been paid in full for same and hereby forever waives and releases any and all claims, suits, demands, or lien rights for same.

---

[3] According to the arbitrator's decision, at least one of the claims for damages that Bilray submitted to arbitration arose on March 28, 2010, after the date of the release. The arbitrator does not indicate the dates for Bilray's other claims.

"5. That [Bilray] has made all payments due for work performed and materials provided to the extent covered by payments previously received bye [sic] [Bilray] for work in connection with the Project, except for the amounts unpaid to the below listed parties * * *."[4]

The typewritten word "NONE" appears in the space provided below paragraph 5 of the release.

Berkshire asserted that the release unambiguously waived any and all of Bilray's claims arising prior to March 25, 2010. In making this argument, Berkshire relied on this Court's decision in Gustafson v. Max Fish Plumbing & Heating Co., 622 A.2d 450 (R.I. 1993) (Max Fish), in which we held that a subcontractor's execution of a release unambiguously waived any and all claims for labor, materials, and subcontracted work. See id. at 452. Berkshire specifically argued that the release which Bilray signed was even more stringent than the release at issue in Max Fish.

In a written decision dated June 26, 2012, the arbitrator rejected Berkshire's argument that the release barred Bilray's claims. The arbitrator began his analysis by noting that the release at issue in Max Fish "differ[ed] materially" from the release executed by Bilray. He then analyzed the specific language of Bilray's release. Pointing to the language concerning indemnification in paragraph 3 of the release, he determined that paragraph 3's protections inured only to the benefit of the owner and premises, and not to Berkshire's benefit. The arbitrator went on to consider paragraph 4. The arbitrator stated that it was not clear whether paragraph 4 released claims only against the owner or additionally released claims against Berkshire. He ultimately concluded, however, that this uncertainty was immaterial because the "release language of [p]aragraph 4 expressly applies only to the items embodied in the

---

[4] Although Berkshire focused on the March 25, 2010 release, it additionally submitted to the arbitrator copies of three prior releases that contained nearly identical language and were dated February 25, 2010, January 29, 2010, and December 24, 2009.

requisition of [March 25, 2010]." The parties, the arbitrator pointed out, had not submitted a copy of the requisition referenced in the release. He reasoned that, without such a copy, he could not determine whether the release would operate to bar the claims which Bilray had submitted for arbitration. Accordingly, the arbitrator concluded that "the evidence * * * is insufficient to warrant a finding that the * * * [r]elease extinguished Bilray's claims."[5]

The arbitrator proceeded to consider the merits of the parties' dispute and their claims for damages in a second written decision, dated July 26, 2012. He found that Berkshire's termination of Bilray was wrongful. The arbitrator granted Bilray $136,949.04 in damages but allowed Berkshire a set-off of $40,599,[6] resulting in a net award to Bilray of $96,350.04.

Berkshire filed a complaint[7] in Providence County Superior Court seeking to vacate the arbitrator's award pursuant to G.L. 1956 § 10-3-12. After Bilray objected to the motion to vacate, a hearing on Berkshire's motion was held before a Superior Court trial justice on September 11, 2012. In a decision rendered that same day, the trial justice found that the release unambiguously waived all claims before March 25, 2010 with no exceptions. He suggested that the arbitrator's interpretation of the release had changed the wording of that document. Upon comparing the language of paragraphs 3, 4, and 5 of the release with the language of the release at issue in Max Fish, the trial justice agreed with Berkshire that the release in the instant case was more stringent than the release in Max Fish. He concluded that the arbitrator had manifestly disregarded the law. Accordingly, the trial justice granted Berkshire's motion to vacate the

---

[5] The arbitrator did not explicitly address paragraph 5 of the release in his decision.

[6] The arbitrator allowed Berkshire one claimed expense of $40,599, which represented the replacement cost of loam that Bilray had allegedly removed from the project and failed to return.

[7] The provisions of chapter 3 of title 10 alternatively refer to an action in Superior Court to review an arbitration award as being commenced by "application" and "motion." In the instant case, plaintiff filed a complaint, and the matter was docketed in the Superior Court as a miscellaneous petition.

arbitration award.  An order and a judgment vacating the arbitration award entered the following day, September 12, 2012.  Bilray timely appealed to this Court.[8]

## II

## Standard of Review

Rhode Island has a strong public policy in favor of the finality of arbitration awards.  See North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008).  "Parties voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts."  Aetna Casualty & Surety Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991).  To preserve the integrity and efficacy of arbitration proceedings, judicial review of arbitration awards is extremely limited.  Aponik v. Lauricella, 844 A.2d 698, 704 (R.I. 2004).  "[P]arties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law."  Prudential Property and Casualty Insurance Co. v. Flynn, 687 A.2d 440, 441 (R.I. 1996).

The "policy of finality is reflected in the limited grounds that the Legislature has delineated for vacating an arbitration award."  Prudential Property and Casualty Insurance Co., 687 A.2d at 441.  In reviewing an arbitrator's award, this Court, like the Superior Court, follows § 10-3-12.  See City of Cranston v. Rhode Island Laborers' District Council Local 1033, 960 A.2d 529, 532 (R.I. 2008).  That statute provides in pertinent part, "the court must make an order vacating the award upon the application of any party to the arbitration * * * [w]here the

[8] The same day that Bilray filed its notice of appeal, Berkshire filed a motion to confirm the portion of the arbitration award that granted it $40,599 in damages.  Bilray objected to the motion to confirm.  The parties appear to disagree as to whether the Superior Court judgment from September 12, 2012 vacated the entire arbitration award or just the part of the award granting Bilray damages.  This disagreement, however, is immaterial for the purposes of the instant appeal.

- 5 -

arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Section 10-3-12(4). An arbitrator may exceed his or her authority by giving an interpretation that fails to draw its essence from the parties' agreement, is not passably plausible, reaches an irrational result, or manifestly disregards a provision of the agreement. See, e.g., City of Newport v. Lama, 797 A.2d 470, 472 (R.I. 2002); Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 837 (R.I. 2001); Department of Children, Youth and Families v. Rhode Island Council 94, AFSME, 713 A.2d 1250, 1253 (R.I. 1998). A court may also vacate an arbitrator's award when the arbitrator has manifestly disregarded the law. Prudential Property and Casualty Insurance Co., 687 A.2d at 442. "[E]very reasonable presumption in favor of the award will be made." Feibelman v. F.O., Inc., 604 A.2d 344, 345 (R.I. 1992) (quoting Coventry Teachers' Alliance v. Coventry School Committee, 417 A.2d 886, 888 (R.I. 1980)). A party claiming that an arbitrator exceeded his or her authority bears the burden of proving that contention. See Coventry Teachers' Alliance, 417 A.2d at 888.

### III

### Discussion

On appeal, Bilray contends that the trial justice improperly vacated the arbitrator's award. Berkshire counters that the vacation of the award was proper because the arbitrator exceeded his authority by manifestly disregarding both the law as articulated in Max Fish and the plain language of the release. Bilray, in contrast, characterizes the arbitrator's decision as a thoughtful analysis of both the relevant language of the release and this Court's decision in Max Fish.

Berkshire's arguments here largely mirror those advanced by the plaintiff in this Court's decision in Prudential Property and Casualty Insurance Co., 687 A.2d 440 (hereinafter Prudential). In Prudential, the plaintiff argued that the manner in which a panel of arbitrators calculated

prejudgment interest manifestly disregarded both the parties' contract and prior decisions of this Court. See Prudential, 687 A.2d at 442. The plaintiff conceded, however, that the arbitrators had analyzed this Court's relevant decisions and found them distinguishable. See id.

In rejecting the plaintiff's arguments and refusing to vacate the award in Prudential, this Court emphasized the unique nature of the review of an arbitrator's decision by highlighting an important distinction between our review in an ordinary case and our review of an arbitrator's decision: We explained that, "[w]ere th[e] matter initially decided by a trial justice in the Superior Court, we would not be bound by § 10-3-12 and the policy favoring finality in arbitration, and we would be able to construe and apply the relevant * * * case law." Prudential, 687 A.2d at 443. When, however, a decision has been rendered by an arbitrator, the decision is "insulated from the normal appellate review for errors of law." Id. Accordingly, having concluded in Prudential that the arbitrators did not manifestly disregard the law, we "express[ed] no opinion on the merits of the underlying dispute." Id.

The distinction we emphasized in Prudential bears repeating here, especially in light of Berkshire's reliance on Max Fish. In Max Fish, the matter came before this Court after the general contractor-plaintiff had filed suit in the Superior Court seeking to enjoin the defendant from pursuing arbitration of its claims on the grounds that the execution of a release waived all of the defendant's claims. See Max Fish, 622 A.2d at 451. A Superior Court trial justice found the release to be ambiguous and construed it against the drafter. See id. at 452. We disagreed with the trial justice's finding of ambiguity and reversed based upon our independent conclusion that the release unambiguously precluded the defendant from proceeding with arbitration.[9] See id.

---

[9] Ordinarily, "the various principles of the law of contracts govern the judicial approach to a controversy concerning the meaning of a particular release." Young v. Warwick Rollermagic Skating Center, Inc., 973 A.2d 553, 558 (R.I. 2009) (explaining that "[a] release is a contractual agreement"). Thus, in an ordinary or non-arbitration case, the construction of a clear and unambiguous release would be a question of law to be decided by the trial justice and reviewed

- 7 -

In contrast, the instant case comes to us after an arbitrator has already rendered an interpretation of the parties' release, which interpretation resulted in the issuance of an award that the parties agreed would be final and binding. When we review an arbitrator's decision, we do not engage in our usual de novo review of contracts and other questions of law. Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 64 A.3d 734, 741 (R.I. 2013). The deference due to the arbitrator is such that an arbitrator's mere error of law is insufficient grounds to vacate his award.[10] See Bradford Dyeing Association, Inc. v. J. Stog Tech GMBH, 765 A.2d 1226, 1232 (R.I. 2001). To vacate an arbitrator's decision, we must conclude that the arbitrator has manifestly disregarded the law. "[A] manifest disregard of the law requires something beyond and different from a mere error in the law or failure on the part of the arbitrator[] to understand or apply the law." City of East Providence v. International Association of Firefighters Local 850, 982 A.2d 1281, 1286 (R.I. 2009) (quoting North Providence School Committee, 945 A.2d at 344). A manifest disregard of the law occurs when an arbitrator "understands and correctly articulates the law, but then proceeds to disregard it." City of Cranston, 960 A.2d at 533 (quoting North Providence School Committee, 945 A.2d at 344).

In arguing that the arbitrator manifestly disregarded the law, Berkshire challenges the arbitrator's determination that Max Fish is not dispositive of the instant case. Berkshire specifically

de novo. Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980); Young, 973 A.2d at 558. As we explain above, however, we do not employ our ordinary standard of review in the instant case because the matter comes before this Court, as it came before the Superior Court, upon review of an arbitrator's decision.

[10] In 1929, when the General Assembly enacted the legislation that is now chapter 3 of title 10, it failed to include a mistake of law as one of the enumerated statutory grounds for vacating an arbitration award. See Bradford Dyeing Association, Inc. v. J. Stog Tech GMBH, 765 A.2d 1226, 1232 n.8 (R.I. 2001). Previously, at common law, an arbitrator's error of law present on the face of the award was sufficient to vacate the award. See id. (citing Harris v. Social Manufacturing Co., 8 R.I. 133, 139 (1864)). This Court concluded that the omission of mistake of law from the legislative enactment was "convincing evidence that [the General Assembly] did not intend that an award under the statute should be open to question on that ground." Loretta Realty Corp. v. Massachusetts Bonding and Insurance Co., 83 R.I. 221, 226, 114 A.2d 846, 849 (1955).

points to this Court's conclusion in Max Fish that a general contractor was entitled to rely upon a subcontractor's waiver of all claims because the subcontractor had executed a release in order to induce the general contractor to make payment. Berkshire insists that it is entitled to the same reliance. According to Berkshire, the release in the instant case is more stringent than the release at issue in Max Fish.

Although Berkshire's recitation of our reasoning in Max Fish is accurate, none of Berkshire's arguments suffice to vacate the arbitrator's award. The arbitrator here compared the release that Bilray executed with the release in Max Fish and determined that the two releases "differ[ed] materially." From our perspective, such an analysis does not show a disregard for our caselaw but rather strikes us as an earnest attempt to interpret Bilray's release in light of our holding in Max Fish. See North Providence School Committee, 945 A.2d at 344 n.9 (noting that, if an award contains an "honest decision," we will not set it aside for an error of law or fact); see also Prudential, 687 A.2d at 442 (rejecting argument that arbitrators manifestly disregarded the law where the plaintiff conceded that arbitrators distinguished this Court's precedent). Our independent estimation of whether Bilray's release is more or less stringent than the release in Max Fish is irrelevant since we conclude that the arbitrator's decision neither is irrational nor manifestly disregards the law.

In making its second argument that the arbitrator manifestly disregarded the release, Berkshire points to several alleged errors on the part of the arbitrator that it asserts were sufficient grounds for the trial justice to vacate the award. In particular, Berkshire argues that the arbitrator overlooked relevant language in the release when he interpreted that document as only inuring to the benefit of the owner and the premises. Berkshire additionally argues that the arbitrator misconstrued the release by concluding that Bilray had waived claims to only those sums included in the March 25, 2010 requisition. According to Berkshire's interpretation of the release, Bilray waived claims for all labor, materials, and work performed up to and including the date of the requisition.

These arguments amount to little more than Berkshire's disagreement with the arbitrator's interpretation of the release. Even if we were to agree with Berkshire's interpretation, such agreement would not give us license to uphold the trial justice's vacation of the award. As we have explained, review of an arbitration award does not permit "judicial re-examination" of the relevant contractual language. Jacinto v. Egan, 120 R.I. 907, 912, 391 A.2d 1173, 1175 (1978). It is the arbitrator's judgment for which the parties have bargained and by which they have agreed to abide. See id. at 911, 391 A.2d at 1175. Accordingly, an arbitrator's misconstruction of an agreement is not a sufficient basis for vacating an award. Reynolds v. Fraternal Order of Police Lodge No. 9, 475 A.2d 1041, 1043 (R.I. 1984). Only when the arbitrator's decision rises above the high-water marks of implausibility, irrationality, manifest disregard, or failure to draw its essence from the agreement may a court intervene and strike it down.

In the instant case, the arbitrator unmistakably attempted to ground his analysis in the language of the parties' release. He cited extensively to that document and analyzed its language in detail. We are satisfied that the arbitrator's decision shows all due regard for the parties' release, sufficiently draws its essence therefrom, and does not reach an irrational result. Accordingly, the arbitrator's decision should have been allowed to stand.

In a last attempt to persuade us to uphold the vacation of the award, Berkshire cites to several cases concerning waivers and releases from this jurisdiction and others. If we were at liberty to re-examine the arbitrator's decision de novo, we might find the cited cases instructive. Given our circumscribed scope of review, however, such cases merit no consideration here.[11]

---

[11] None of the cases that Berkshire relies upon involved the review of an arbitrator's construction of a release.

## IV

## Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court. The record in this case is remanded to the Superior Court with the instruction to enter judgment on the motion to vacate in favor of Bilray.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

TITLE OF CASE:        Berkshire Wilton Partners, LLC v. Bilray Demolition Co., Inc.

CASE NO:        No. 2013-191-Appeal.
(PM 12-4060)

COURT:        Supreme Court

DATE OPINION FILED:   June 9, 2014

JUSTICES:        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

WRITTEN BY:        Associate Justice Gilbert V. Indeglia

SOURCE OF APPEAL:     Providence County Superior Court

JUDGE FROM LOWER COURT:

Associate Justice William E. Carnes, Jr.

ATTORNEYS ON APPEAL:

For Plaintiff:  Girard R. Visconti, Esq.

For Defendants:  Fred J. Volpe, Esq.