June 13, 2018

**Supreme Court**
No. 2017-188-Appeal.
(PM 16-3911)

Prospect CharterCARE, LLC        :

            v.                   :

Michael E. Conklin, Jr.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Prospect CharterCARE, LLC       :

v.       :

Michael E. Conklin, Jr.       :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The plaintiff, Prospect CharterCARE, LLC (PCC), appeals from an order of the Providence County Superior Court issued on February 10, 2017, denying PCC's motion to vacate an arbitration award and confirming the award in favor of the defendant, Michael E. Conklin, Jr. On appeal, the plaintiff contends that the arbitrator manifestly disregarded both the law and the provisions of the employment agreement at issue when he awarded the defendant extended severance payments based on his finding that the defendant had been the subject of a "de facto termination"—a critical term in the employment agreement.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time without further briefing or argument. For the reasons set forth herein, we affirm the order of the Superior Court.

# I

## Facts and Travel[1]

In May of 2010, Mr. Conklin was hired by CharterCARE Health Partners (CHP) as that company's Vice President of Finance and Chief Financial Officer. In view of his duties as Chief Financial Officer, Mr. Conklin was a member of the Senior Leadership Team of CHP. That entity owned and operated two hospitals: Roger Williams Medical Center and Our Lady of Fatima Hospital (Fatima Hospital).[2] In October of 2010, John Fogarty, the then-President and Chief Executive Officer of St. Joseph Health Services of Rhode Island (St. Joseph Health Services) resigned. As a result of that resignation, defendant was directed by CHP leadership to assume responsibility as the "'head of operations' for St. Joseph Health Services * * * and * * * Fatima Hospital" in addition to continuing to perform his duties as CHP's Vice President of Finance and Chief Financial Officer. In light of his assuming responsibility for the operational duties, Mr. Conklin's annual salary was increased by $19,000; and he received the additional title of "Senior Vice President" as well as an updated job description, which stated that "[t]he position of Senior Vice President and Chief Financial Officer also serves in the capacity of head of operations for St. Joseph Health Services * * *."

In January of 2012, Mr. Conklin entered into a new employment agreement[3] with CHP, which added to the then-existing severance provision a "De Facto Termination" provision. That provision gave executive employees, such as Mr. Conklin, the right to receive an extended,

---

[1]  Except where we indicate otherwise, the facts pertinent to this appeal are undisputed. We have, for the most part, based our chronological narrative on the arbitrator's exposition.

[2]  The record sometimes refers to Our Lady of Fatima Hospital as "St. Joseph's" or "St. Joe's." However, as the hearing justice observed: "They are one in the same. * * * Fatima is a hospital under the umbrella of St. Joseph Health Services of Rhode Island."

[3]  In accordance with the usage of the arbitrator and the hearing justice, we shall hereinafter refer to the January 2012 agreement as the "Employment Agreement." Certain relevant provisions thereof are set forth in the Appendix to this opinion.

eighteen-month severance payment in the event that they experienced a "material reduction" in their "material duties" as a result of a "[c]hange in [c]ontrol" of the entity. As the arbitrator observed, this provision was added in anticipation of a future joint venture with a capital partner and was "intended to create a strong safety net for those employees who had faithfully served their organization."

In March of 2013, CHP signed a letter of intent to enter into a joint venture with Prospect Medical Holdings; that transaction closed in June of 2014, thereby creating PCC as the successor entity, which is the plaintiff in the instant case. Subsequently, PCC hired one Tom Hughes to serve as President and Chief Executive Officer of Fatima Hospital. After Mr. Hughes took office in July of 2014, Mr. Conklin's operational responsibilities at Fatima Hospital ceased, although he continued to receive his full salary and retained his title as Vice President and Chief Financial Officer within PCC.

On July 10, 2014, Mr. Conklin delivered to his supervisor, Ken Belcher, a letter invoking the "De Facto Termination" provision of the Employment Agreement, contending that he had suffered "a material reduction in [his] duties and authorities as a result of change in effective control." Mr. Belcher relayed Mr. Conklin's request to Thomas Reardon, an executive at PCC, who replied that PCC would not provide Mr. Conklin with extended severance payments. In response to this initial denial of Mr. Conklin's request, Mr. Belcher sent an email to Edwin Santos, the chairman of PCC's Board of Trustees. In that email, Mr. Belcher set out the applicable provisions of the Employment Agreement as well as his interpretation of those provisions; and he then stated:

> "The reason [Mr. Reardon] provided [for denying Mr. Conklin's extended severance payments] was that there has been no material change in [his] duties. As you know, this is incorrect and action must be taken to overturn this misguided decision."

Mr. Belcher's email to Mr. Santos concluded as follows:

- 3 -

"There clearly has been a material reduction in [Mr. Conklin's] duties. With the hiring of a new President of [Fatima Hospital], [Mr. Conklin] is no longer the 'head of operations' * * * and his responsibilities will diminish accordingly.

"[Mr. Conklin] has been as hard working and as loyal to our system as we could ever hope for. His job has changed. The [CHP] Executive Committee thought this might happen and took action to protect the executives. Let's fix this and allow [Mr. Conklin] to move on having been properly treated while here at [PCC]. He deserves nothing less."

Mr. Belcher's exhortation was unsuccessful; and, on July 22, 2014, Mr. Reardon sent a letter to Mr. Conklin formally denying his request for extended severance. Mr. Reardon's denial was predicated on his assessment that Mr. Conklin had suffered no "material reduction in duties incident to the position of Senior Vice President and Chief Financial Officer of [PCC]."

On November 5, 2014, Mr. Conklin filed a demand for arbitration,[4] in which he sought to be awarded extended severance benefits pursuant to the "De Facto Termination" provision of the Employment Agreement. In April of 2016, the arbitrator conducted a three-day hearing, and the parties stipulated that the following were the only two issues to be resolved by the arbitrator:

"(a) Whether [PCC] breached the terms and conditions of the Employment Agreement entered into by and between * * * PCC and Michael E. Conklin, Jr. * * * on January 2, 2012;

"(b) Whether [Mr.] Conklin sustained damages as a result of PCC's potentially unlawful conduct."

At the hearing, PCC contended that Mr. Conklin's responsibilities as "head of operations" at Fatima Hospital were not "material" duties, but rather were more accurately characterized as "time to time" duties. In support of this argument, PCC pointed to clause two of the Employment Agreement, which states that an executive "shall have all of the duties, responsibilities, authorities

---

[4] We note that clause thirteen of the Employment Agreement provides as follows: "Should any dispute arise hereunder, it shall be resolved by binding arbitration * * *." *See* Appendix.

and powers normally incident to such position," while further providing that the executive shall also perform "such functions and duties of an executive nature as may from time to time be assigned to him * * *." It was PCC's contention that Mr. Conklin's responsibilities as "head of operations" at Fatima Hospital fell into the category of duties that "may from time to time be assigned to him." PCC further argued that Mr. Conklin had not suffered any "material reduction" in his duties because, after PCC came into existence, he had retained the "same title, same salary, same office space, supervisory authority, and comparable duties requiring similar skills * * *."

After reviewing the relevant provisions of the contract, summarizing the evidence and the testimony adduced at the hearing, and considering the arguments of the parties, the arbitrator rejected PCC's assertion that Mr. Conklin's duties as "head of operations" at Fatima Hospital were merely "time to time" responsibilities, finding it "implausible that [CHP] would increase his salary by $19,000 because he was simply doing 'time to time' work." The arbitrator observed that both parties had cited to language in the case of *Roberton v. Citizens Utilities Co.*, 122 F. Supp. 2d 279 (D. Conn. 2000), as support for the proposition that a material reduction occurs when an employee's job is "effectively reduced by well more than half." *Roberton*, 122 F. Supp. 2d at 285. The arbitrator also stated that "[Mr.] Conklin's responsibilities as 'head of operations' of St. Joseph Health Services * * * occupied 60% of his work * * *." However, the arbitrator thereafter stated that "[t]he most compelling argument for material reduction in [Mr.] Conklin's duties as both Senior Vice President and Chief Financial Officer is Belcher's emails and testimony that it was just that – a material reduction." The arbitrator found that, "[o]nce these ['head of operations'] responsibilities were cut, [Mr. Conklin] was no longer performing the material duties that were normally incident to his Senior Presiden[t] position." Accordingly, on August 1, 2016, the arbitrator issued a written decision, concluding that Mr. Conklin's "right to terminate the contract under the January 2012 Employment Agreement's de facto termination clause [was]

abridged" and that Mr. Conklin was "entitled to the eighteen-month severance proscribed [*sic*] therein."[5]

On August 19, 2016, PCC filed a petition to vacate the arbitration award in Superior Court; Mr. Conklin filed a counter-petition to confirm the award on September 9, 2016. On September 14, 2016, PCC filed a motion to vacate the arbitration award as well as an objection to Mr. Conklin's cross-petition to confirm the award. PCC cited three grounds as the bases for its motion to vacate. First, PCC argued that Mr. Conklin had failed to prove that PCC had either assumed or been assigned the employment contracts entered into by CHP prior to the creation of PCC and that, therefore, it was not responsible for payment of the extended severance to Mr. Conklin. Second, PCC argued that the award should be vacated because it was "based upon a concededly erroneous fact" and that, therefore, the arbitrator had committed what "amount[ed] to a manifest disregard of the applicable law" when he relied upon that erroneous fact in his analysis. Specifically, PCC claimed that the arbitrator manifestly disregarded the law when he based his decision on the "material reduction" definition in *Roberton*, 122 F. Supp. 2d at 285, while at the same time erroneously stating that Mr. Conklin's "head of operations duties comprised 60% of his work duties." PCC contended that the arbitrator's just-quoted factual statement was "concededly erroneous" because, PCC notes, "[Mr.] Conklin, himself, clearly testified that his duties were divided approximately '60 percent [Chief Financial Officer] and 40 percent operating duties.'" PCC argued that, but for the arbitrator's misunderstanding about the percentage of time Mr. Conklin spent carrying out his operational duties as compared with his financial duties, "the Award would have been different." Third, PCC alleged that the arbitrator manifestly disregarded the contract because, in its view, the award analyzed only Mr. Conklin's duties as Senior Vice

---

[5] In a supplemental award issued on August 2, 2016, the arbitrator also awarded Mr. Conklin prejudgment interest on the eighteen months of severance payments. No appellate argument has been made concerning that award.

- 6 -

President and did not adequately analyze the "other material duties" associated with Mr. Conklin's position as Chief Financial Officer. In due course, Mr. Conklin objected to the motion to vacate and simultaneously moved to confirm the arbitration award.

A justice of the Superior Court conducted a hearing on the cross-motions; and, on January 19, 2017, he issued a written decision denying PCC's motion to vacate and granting Mr. Conklin's motion to confirm the arbitration award. The hearing justice rejected PCC's contention that the award was "mistakenly based upon a crucial factual assumption that [Mr.] Conklin's head of operations duties comprised 60% of his work duties which was concededly erroneous" and its further contention that the arbitrator had manifestly disregarded the law when he "correctly" cited the *Roberton* case as "a guiding precedent," but then incorrectly applied it to the facts in the instant case. The hearing justice stated that, because "*Roberton* is not controlling law in this jurisdiction," the arbitrator's use or misuse of that case was irrelevant to determining whether the arbitrator manifestly disregarded Rhode Island law in his decision. He also found that the arbitrator did not manifestly disregard the law when he "utilized an inaccurate fact in his analysis" because, in his view, the "underpinning" of the arbitrator's finding that Mr. Conklin had suffered a material reduction in his material duties was "the assertion by Belcher that there had been such a substantial diminishment [in Mr. Conklin's duties]" rather than the "allocation of percentages between the amount of time [Mr.] Conklin spent doing his head of operations duties versus his [Chief Financial Officer] duties."

The hearing justice further determined that the arbitrator had not manifestly disregarded the contract because "the [a]rbitrator unmistakably attempted to ground his analysis in the language of § 7(b) of the Employment Agreement" and because the award "sufficiently [drew] its essence therefrom * * *." (Internal quotation marks omitted.)

Lastly, the hearing justice found that PCC had waived its argument that it had not assumed the liability for Mr. Conklin's contract with CHP by failing to raise that issue before the arbitrator.

Having considered PCC's arguments, the hearing justice issued an order confirming the award in Mr. Conklin's favor on February 10, 2017, and PCC timely appealed.

## II

### Standard of Review

In the very recent opinion in the case of *ABC Building Corp. v. Ropolo Family, LLC*, 179 A.3d 701 (R.I. 2018), this Court reiterated its adherence to Rhode Island's "strong public policy in favor of the finality of arbitration awards." *ABC Building Corp.*, 179 A.3d at 705 (quoting *Berkshire Wilton Partners, LLC v. Bilray Demolition Co., Inc.*, 91 A.3d 830, 834 (R.I. 2014)). The Court then proceeded to reference G.L. 1956 § 10-3-12, noting that said section "sets forth the narrow conditions pursuant to which an arbitration award must be vacated[.]" *Id.* at 705-06. In its opinion in the *ABC Building Corp.* case, the Court went on to state that "[a]n arbitrator may exceed his or her authority by giving an interpretation that fails to draw its essence from the parties' agreement, is not passably plausible, reaches an irrational result, or manifestly disregards a provision of the agreement." *Id.* at 706 (internal quotation marks omitted). Next, the Court in *ABC Building Corp.* noted that "[a]n arbitration award may also be vacated when the arbitrator has manifestly disregarded the law." *Id.* (internal quotation marks omitted). Finally, the Court once again clarified that "[a] manifest disregard of the law requires something beyond and different from a mere error in the law or failure on the part of the arbitrator[] to understand or apply the law. * * * Rather, it occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." *Id.* (internal quotation marks omitted).

We are mindful of the limited role of the judiciary in reviewing arbitration awards because "parties who have contractually agreed to accept arbitration as binding are not allowed to

circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." *Prudential Property and Casualty Insurance Co. v. Flynn*, 687 A.2d 440, 441 (R.I. 1996). Indeed, the proper role of the courts in reviewing an award is merely "to determine whether the arbitrator has resolved the grievance by considering the proper sources [of] the contract * * * but not to determine whether the arbitrator has resolved the grievance correctly." *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978) (internal quotation marks omitted). Accordingly, "[o]nly in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene." *Prudential Property and Casualty Insurance Co.*, 687 A.2d at 441. To this end, "[e]very reasonable presumption in favor of the award will be made," and the party claiming that an arbitrator exceeded his authority "bears the burden of proving that contention." *Berkshire Wilton Partners, LLC*, 91 A.3d at 835 (internal quotation marks omitted); *see also ABC Building Corp.*, 179 A.3d at 706 ("Because public policy favors the finality of arbitration awards, * * * such awards enjoy a presumption of validity.") (internal quotation marks omitted); *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 344 (R.I. 2008).

# III

## Analysis

PCC has raised three arguments on appeal, which are essentially the same as those that it raised in the Superior Court. First, PCC contends that the arbitrator manifestly disregarded the law when he correctly articulated the applicable legal principle, but then relied upon a "concededly erroneous" fact in applying that principle in his analysis. Second, PCC argues that the arbitrator manifestly disregarded the Employment Agreement by "only consider[ing] the responsibilities associated with the 'head of operations' role" while conducting "no analysis whatsoever" with

respect to Mr. Conklin's financial duties. Third, PCC argues that "[j]udgment on the Award cannot be entered against [PCC]" because "[t]he Employment Agreement at issue is by and between Conklin and [CHP] * * * not between Conklin and [PCC]" and that, therefore, PCC is not liable to pay the extended severance benefits at issue. We shall address each argument in turn.

**A**

**The Alleged Factual Error and Manifest Disregard of the Law**

PCC first avers that the arbitrator manifestly disregarded the law when, after referring to *Roberton v. Citizens Utilities Co.*, 122 F. Supp. 2d 279 (D. Conn. 2000), for the purpose of defining a "material reduction" of duties, he then relied upon "concededly erroneous" facts in applying that definition.[6] *Roberton*, 122 F. Supp. 2d at 285. According to PCC, the arbitrator premised his reasoning on the language in *Roberton*, which states that the employee suffered a "material reduction" in duties when "[h]is job was effectively reduced by *well more than half.*" *Id.* (emphasis added). However, PCC notes that, after "correctly articulat[ing]" that language in *Roberton*, the arbitrator proceeded to state as follows:

> "The initial question is whether there was a reduction of responsibilities. [PCC] points to Belcher's testimony that [Mr.] Conklin's responsibilities as 'head of operations' of St. Joseph Health Services * * * *occupied 60% of his work*, whether Belcher was on sight [*sic*] or not. * * * They further argue that the moment that Hughes was hired, [Mr.] Conklin was no longer the 'head of operations.'" (Emphasis added.)

PCC contends that the arbitrator thereby misstated the record evidence. PCC points to the fact that "[Mr.] Conklin, himself, testified that his *financial duties* occupied 60% of his overall duties, and his operational duties [at Fatima Hospital] occupied the remaining 40% of his duties." (Emphasis added.) As such, PCC argues that the arbitrator mistakenly believed Mr. Conklin's

---

[6]     We pause to note that *Roberton v. Citizens Utilities Co.*, 122 F. Supp. 2d 279 (D. Conn. 2000), a decision of a federal trial court, is not binding on this Court. We mention said case only because it was referenced by the arbitrator and by the hearing justice.

- 10 -

operational responsibilities at Fatima Hospital "occupied 60% of his overall duties" when, in fact, those responsibilities comprised only 40 percent of his duties. On that basis, PCC argues that the only reason the arbitrator found in favor of Mr. Conklin was that he erroneously believed that Mr. Conklin had lost 60 percent (*i.e.*, "well more than half") of his *overall* duties when he lost his operational responsibilities at Fatima Hospital. PCC further argues that this mistake of fact was sufficiently egregious to warrant vacating the award because, in its view, "if the accurate testimony [had been] cited, then a different decision would have been reached."

In our view, PCC's contention that the arbitrator based his decision on a "concededly erroneous" fact and thereby manifestly disregarded the law is unavailing for several reasons. First, the contention that the arbitrator "based" his decision on the finding that Mr. Conklin spent 60 percent of his time executing his operational duties overlooks the arbitrator's express finding that the "most compelling" evidence that Mr. Conklin had experienced a "material reduction" in his material duties was the email sent by his supervisor to the chairman of PCC's Board of Trustees. As both the arbitrator and the hearing justice noted, that email expressly stated that Mr. Conklin suffered a material reduction in his duties when he lost his responsibilities as head of operations at Fatima Hospital. We remain mindful that, when reviewing an arbitration award, we make "[e]very reasonable presumption *in favor of the award*." *Berkshire Wilton Partners, LLC*, 91 A.3d at 835 (emphasis added) (internal quotation marks omitted); *see also North Providence School Committee*, 945 A.2d at 344 ("Due to the public policy favoring the finality of arbitration awards, such awards enjoy a presumption of validity."). Bearing that presumption in mind, we are of the view that the arbitrator based the essence of his award on evidence other than the calculation on a percentage basis of Mr. Conklin's work duties—namely, Mr. Belcher's email. Accordingly, we are unpersuaded by PCC's emphasis on the arbitrator's misstatement of fact regarding the

percentage of time Mr. Conklin spent executing his operational duties as compared with his financial duties.

Moreover, even if the arbitrator had based his decision in part on a factual error, such a mistake would not be a proper basis upon which to vacate the arbitration award. Neither the narrow conditions delineated in § 10-3-12 nor our case law interpreting those conditions permits a court to vacate an arbitration award merely because it rests upon legal or factual misstatements. We have previously stated that "[t]he statutory directive is clear: a reviewing justice *must* confirm the award unless statutory grounds exist to warrant some other action" or this Court determines that the arbitrator manifestly disregarded the law or reached an irrational result. *Wheeler v. Compass Insurance Co.*, 66 A.3d 477, 481 (R.I. 2013) (emphasis added). Additionally, this Court has consistently stated that, when reviewing arbitration awards, courts "may not reconsider the merits of an award despite allegations that it rests upon errors of fact * * *." *Rhode Island Council 94, AFSCME, AFL-CIO v. State*, 714 A.2d 584, 588 (R.I. 1998); *see also North Providence School Committee*, 945 A.2d at 344-45 n.9 (stating that "[j]udicial deference to arbitral awards" requires that said awards "will not be opened for errors of law or fact on the part of the arbitrator") (internal quotation marks omitted).

**B**

**Manifest Disregard of the Employment Agreement**

Next, PCC contends that the arbitrator manifestly disregarded the Employment Agreement when he "only considered the responsibilities associated with [Mr. Conklin's] 'head of operations' role," while not addressing his other duties. According to PCC, "pursuant to the terms of the Employment Agreement, a de facto termination may only occur where *the* material duties, not

- 12 -

certain material duties, are removed from the position of *SVP and CFO*."[7] (Emphasis in original.) PCC contends that the arbitrator analyzed only "certain" material duties in contravention of this contractual requirement because he conducted "no analysis whatsoever with regard to the fact that [Mr.] Conklin continued to perform the duties relative to his responsibility for a daily financial operation of the entire Prospect CharterCARE system, the fact that [Mr. Conklin] remained on Prospect CharterCARE's Senior Leadership Team, or the fact that [Mr.] Conklin remained the third highest ranking executive in the Prospect CharterCARE system with the exact same compensation and the same supervisory authority." As such, in PCC's view, the arbitrator manifestly disregarded the contractual provisions relative to the triggering of the "De Facto Termination" clause.

It is well established that "review of an arbitration award does not permit judicial re-examination of the relevant contractual language" unless the arbitrator's award fails to draw its essence from the contract or is otherwise irrational. *Berkshire Wilton Partners, LLC*, 91 A.3d at 837 (internal quotation marks omitted). In the instant case, the record reflects that the arbitrator reviewed and analyzed the pertinent portions of the Employment Agreement. His award clearly "draw[s] its essence" from that contract, and the extensive reasoning articulated in the award demonstrates that he did not manifestly disregard the contractual provisions or reach an irrational result such as would warrant the vacation of that award. *Id.* at 835.

As such, it is our view that the arbitrator's opting not to engage in an extended narrative concerning Mr. Conklin's non-operational duties should not serve as the basis for vacating the arbitration award. Accordingly, it is further our view that the arbitrator did not manifestly disregard the contract in rendering his award, which award was certainly "based upon a passably

---

[7] We understand the initials "SVP" to refer to the position of "Senior Vice President" and the initials "CFO" to refer to the position of "Chief Financial Officer."

plausible interpretation of the [Employment Agreement.]" *ABC Building Corp.*, 179 A.3d at 706 (internal quotation marks omitted).

## C

### Whether Judgment on the Award Can Be Entered Against PCC

Finally, PCC contends that, even if the award is not vacated, it should not be enforced against PCC because Mr. Conklin did not prove that PCC had assumed liability with respect to the Employment Agreement.

As the hearing justice observed, there is no need to reach the merits of this contention because PCC failed to raise this argument before the arbitrator—and thus it is waived for the purpose of appellate review. *See Aponik v. Lauricella*, 844 A.2d 698, 706 (R.I. 2004) (holding that the failure to request attorneys' fees and costs before the arbitrator waived any rights thereto provided by the Mechanics' Lien statute); *see also In re Shy C.*, 126 A.3d 433, 434-35 (R.I. 2015); *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 628-29 (R.I. 2011).

## IV
### Conclusion

After carefully reviewing the evidence in the record and the arguments of the parties, we are of the opinion that there is nothing in the record to support PCC's contention that the arbitrator exceeded his powers or manifestly disregarded the law or the contract. Accordingly, we perceive no basis upon which to vacate the arbitrator's award.

For the reasons set forth in this opinion, we affirm the order of the Superior Court. The record may be returned to that tribunal.

Justice Indeglia did not participate.

**CharterCARE Health Partners Employment Agreement (January 2012)**

"2.     Duties. Executive shall render full time professional services to CharterCARE in the capacity of Sr. Vice President and Chief Financial Officer and shall have all of the duties, responsibilities, authorities and powers normally incident to such position. Executive shall report to the President and Chief Executive Officer and shall perform such functions and duties of an executive nature as may from time to time be assigned to him by the President and Chief Executive Officer, including serving as an officer or director to any corporation affiliated with CharterCARE. During the Employment Period, Executive shall devote his full business time and best efforts, business judgment, skill and knowledge to the performance of Executive's duties and responsibilities hereunder.

"* * *

"* * *

"* * *

"* * *

"7.     De Facto Termination.

"(a) Should CharterCARE in its discretion materially reduce the duties or authorities of Executive without obtaining the Executive's written consent such that it can be reasonably found that he is no longer performing the material duties normally incident to the position of Sr. Vice President and Chief Financial Officer of [CHP], the Executive shall have the right, in his discretion, to terminate this Agreement by written notice delivered to the President and CEO, within ten (10) days of such material reduction in duties or authority.  After such termination, Executive shall be entitled to the payments and benefits described in Paragraph 6 above subject to the requirement to executive and not revoke the Separation Agreement.

"(b) In the event of a material reduction of the duties or authorities of Executive (or a termination without cause) without the Executive's written consent such that it can be reasonably found that he is no longer performing the material duties normally incident to the position of Sr. Vice President and Chief Financial Officer of [CHP] resulting from and occurring within one (1) year of a Change in Control, the Executive shall have the right, in his discretion, to terminate this Agreement by written notice delivered to the President and CEO, within ten (10) days of such material reduction in duties or authority. After such termination, Executive shall be entitled to the payments and benefits described in Paragraph 6 for a

period of eighteen (18) months following the termination date as an enhanced severance payment (the "Extended Severance Period") subject to the requirement to execute and not revoke the Separation Agreement.

"* * *
"* * *
"* * *
"* * *
"* * *

"13.    Arbitration.  Should any dispute arise hereunder, it shall be resolved by binding arbitration under the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association by a single arbitrator sitting in Providence, Rhode Island chosen through the American Arbitration Association. CharterCARE and Executive shall bear its and his own respective costs (including attorneys fees) incurred in connection with any arbitration. The parties shall share equally the arbitrator's fees and expenses."

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Prospect CharterCARE, LLC v. Michael E. Conklin, Jr. |
| **Case Number** | No. 2017-188-Appeal.<br>(PM 16-3911) |
| **Date Opinion Filed** | June 13, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>William M. Russo, Esq. |
| | For Defendant:<br><br>Gina A. DiCenso, Esq.<br>V. Edward Formisano, Esq. |