June 29, 2022

**Supreme Court**

No. 2021-58-Appeal.
(PM 18-6456)

(Dissent begins on Page 14)

Town of North Providence             :

                    v.                    :

Fraternal Order of Police, Lodge 13.    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Town of North Providence     :

v.     :

Fraternal Order of Police, Lodge 13.   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Long, for the Court.**  The plaintiff, the Town of North Providence (the town), appeals from a Superior Court judgment in favor of the defendant, the Fraternal Order of Police, Lodge 13 (the union).  The Superior Court judgment denied the town's petition to vacate an arbitration award and granted the union's motion to confirm the award.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand the case for further proceedings consistent with this opinion.

## Facts and Procedural History

This action stems from a dispute between the town and the union as to the effect of a collective bargaining agreement governing the employment relationship

- 1 -

between the town and the town's police officers (the CBA). The facts that gave rise to the instant appeal are not in dispute.

On February 3, 2017, Detective Scott Godin retired from the North Providence Police Department. Detective Godin's retirement created a vacancy in one of the nine detective positions to which the North Providence Town Council had authorized assignment of eligible patrol officers pursuant to the CBA.

Article VIII, Section 1 of the CBA provides, in part: "The Town agrees to fill [detective] vacancies within forty-five (45) days from the date the vacancy is recognized, subject to the provisions of Article III, Section 1" (the forty-five-day provision). Following Det. Godin's retirement, Mayor Lombardi proposed as part of the town's budget deliberations to eliminate one detective position from the town's organizational chart. The town council ultimately rejected the mayor's proposal. In the meantime, however, the town did not fill the detective vacancy created by the retirement of Det. Godin, and waited until December 2017 to appoint the next-in-line eligible patrol officer—Officer Matthew Phelan (the grievant)—to the vacancy.

The union grieved the town's delay on behalf of the grievant, alleging that the grievant was eligible for and entitled to the appointment to detective effective March 21, 2017, the date the parties stipulated as forty-five days after Det. Godin's

- 2 -

retirement had created the vacancy on February 3, 2017. The parties did not resolve the grievance, and the union appealed the matter to arbitration pursuant to the CBA.

Before the arbitrator, the parties presented the following questions: "Is the grievance substantively arbitrable? If so, did the Town violate the [CBA] when it failed to assign a detective from the existing promotional list, or list, on or before March 21, 2017? If so, what shall be the remedy?"

The union asserted that the forty-five-day provision compelled the town to fill the detective vacancy within forty-five days of Det. Godin's retirement, and that the town had violated the CBA by failing to do so. The union urged the arbitrator to accept that the forty-five-day provision mandated that the town fill a vacancy within forty-five days of the vacancy's creation. The union asked the arbitrator to deem March 21, 2017, as the grievant's assignment date and to award retroactive seniority and time-in-grade as of that date.

The town countered that the forty-five-day clock began running only once the town "recognized" the vacancy, rather than when the vacancy was created by Det. Godin's retirement. The town asserted that there was no evidence that the town had "recognized" the vacancy on February 3, 2017, such that the town could have violated the CBA by failing to fill the vacancy by forty-five days later, on March 21, 2017. The town further asserted that the CBA tasked the town, not the union, with determining the size and structure of the town's police department, and that the town

had exclusive rights and managerial authority to determine whether to recognize a vacancy.

The arbitrator found in favor of the union. In the written arbitration award decision, the arbitrator began by reviewing Article II, Section 1 of the CBA, entitled "Management Rights" (the management-rights provision), which reads:

> "The Union recognizes that except as limited, abridged or relinquished by the terms and provisions of this agreement, all rights to manage, direct or supervise the operation of the department and the employees are vested in the Town. For example, but not limited thereto, the Town shall have the exclusive rights, subject to the provisions of this agreement and consistent with applicable laws and regulations: (a) to direct employees in the performance of official duties; (b) to maintain the efficiency of the operations entrusted to it; (c) to issue reasonable rules and regulations; and (d) to suspend, discharge or otherwise discipline members of the department * * * and (e) to exercise any and all rights and authority granted to the Town as an employer by statute, ordinance and applicable regulations, and to comply with its responsibility thereunder.
>
> "No provision of this agreement shall be applied or construed to limit, impede or abridge any of the Town's authority or obligations granted to it under municipal, state or federal law."

The arbitrator then reviewed the CBA provision at issue, the forty-five-day provision contained in Article VIII, Section 1, and reasoned that Article VIII was "[o]ne such article" through which the town had "limited, abridged or relinquished" its managerial rights. Article VIII, Section 1 reads, in pertinent part:

- 4 -

"Whenever there exists a vacancy in a supervisor's rank, or a detective assignment, the Public Safety Director agrees to fill said vacancy through competitive examinations extended to those employees of the next lowest rank, or to eligible patrolmen in the case of detectives.

"* * *

"The Town agrees to fill vacancies within forty-five (45) days from the date the vacancy is recognized, subject to the provisions of Article III, Section 1."

The arbitrator then turned to Article III, Section 1 of the CBA, which provides:

"The Town shall supply the Union with the current Organizational Chart within thirty (30) days from the ratification of this agreement, upon which shall be listed the numbers and ranks of officers and patrolmen authorized to serve on the department. * * *

"Any changes in the Organizational Chart, including but not limited to, changes in its design, staffing, numbers and/or ranks shall be management's prerogative. However, changes resulting in reduction in ranks and/or department strength are prohibited; provided, however, that this prohibition shall end and sunset on June 30, 2013 and be of no further force and effect."

The arbitrator found that there was no evidence that the town had modified the organizational chart after February 3, 2017.

Finally, the arbitrator recited Article VII of the CBA, which governs vacancies. The arbitrator determined, based on Article VII, that Det. Godin's retirement had "created" a vacancy.

After reviewing these provisions of the CBA, the arbitrator looked to Black's Law Dictionary (5th ed. 1979) and The Merriam-Webster Dictionary (1997) to define the word "recognize." The arbitrator determined, based on his reading of the definitions in those sources, that the town "recognized" the vacancy when it "had notice of" the vacancy. The arbitrator reasoned that the town "had notice of" the vacancy on February 3, 2017, when Det. Godin's retirement created the vacancy; therefore, the arbitrator concluded, the town had violated the CBA by failing to appoint the grievant by forty-five days later, March 21, 2017. The arbitrator awarded the grievant a retroactive assignment date with all contractual rights, including seniority, benefits, and compensation.

The town petitioned the Superior Court on September 10, 2018, to vacate the arbitration award, pursuant to G.L. 1956 §§ 28-9-14 and 28-9-18. The union opposed the petition and moved to confirm the arbitration award. The trial justice concluded that the arbitrator's decision did not rise to the level of implausibility, irrationality, manifest disregard, or a failure to draw its essence from the CBA, and that the arbitrator therefore did not exceed his authority. She therefore denied the town's petition to vacate the arbitration award and granted the union's motion to confirm the award.

The town timely appealed the resulting January 29, 2021 judgment of the Superior Court, asserting that the arbitrator exceeded his authority by disregarding

the plain language of the CBA. Accordingly, we decide the issue of whether the arbitrator's interpretation of the CBA was in excess of his authority.

**Discussion**

"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." *Cumberland Teachers Association v. Cumberland School Committee*, 45 A.3d 1188, 1191 (R.I. 2012) (quoting *City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281, 1285 (R.I. 2009)). The role of the judiciary in arbitration is therefore "statutorily prescribed" and "extremely limited." *Id.* (first quoting *City of East Providence*, 982 A.2d at 1285, then quoting *Aponik v. Lauricella*, 844 A.2d 698, 703 (R.I. 2004)).

However, "although public policy favors the final resolution of disputes by arbitration, this policy relies on the premise that arbitrators act within their power and authority." *State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 867 A.2d 823, 828 (R.I. 2005) (*RIBCO I*) (alterations omitted) (quoting *Town of Coventry v. Turco*, 574 A.2d 143, 147 (R.I. 1990)). Therefore, § 28-9-18 specifically provides that courts may vacate an arbitration award when a party establishes that the arbitrator exceeded their power, or so imperfectly executed that power that a mutual, final, and definite award upon the subject matter was not made.

"[E]very reasonable presumption in favor of the award will be made, and the party claiming that an arbitrator exceeded his authority bears the burden of proving that contention." *Wiggins v. Pianka*, 247 A.3d 135, 139 (R.I. 2021) (quoting *Prospect Chartercare, LLC v. Conklin*, 185 A.3d 538, 544 (R.I. 2018)). This Court will uphold an award "[i]f the award draws its essence from the contract and reflects a passably plausible interpretation of the contract[.]" *State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 115 A.3d 924, 928 (R.I. 2015) (*RIBCO III*) (quoting *State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 64 A.3d 734, 740 (R.I. 2013) (*RIBCO II*)). However, an award may not stand when derived from "a manifest disregard of a contractual provision" or when the result is "completely irrational[.]" *Id.* (quoting *RIBCO II*, 64 A.3d at 739); *see also Prospect Chartercare, LLC*, 185 A.3d at 546 ("'[R]eview of an arbitration award does not permit judicial re-examination of the relevant contractual language' unless the arbitrator's award fails to draw its essence from the contract or is otherwise irrational.") (quoting *Berkshire Wilton Partners, LLC v. Bilray Demolition Co., Inc.*, 91 A.3d 830, 837 (R.I. 2014)). "'[T]he authority of an arbitrator is not unbridled' and 'an arbitrator has a duty to resolve a dispute based on the relevant provisions in the CBA.'" *RIBCO III*, 115 A.3d at 931 (brackets omitted) (quoting *Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee*, 770 A.2d 834, 839 (R.I. 2001)).

Upon review of the record of the case at bar, cognizant that "the role of the judiciary in the arbitration process is extremely limited," *RIBCO I*, 867 A.2d at 829 (quoting *Purvis Systems, Inc. v. American Systems Corporation*, 788 A.2d 1112, 1114 (R.I. 2002)), we conclude that the arbitration award decision reflects an interpretation of the CBA that contravenes the "essence of the contract"; the award derives from a "manifest disregard" of the relevant provisions of the CBA and produces "completely irrational" results. *RIBCO III*, 115 A.3d at 928. In short, we conclude that the arbitrator so imperfectly executed his powers that he failed to make a mutual, final, and definite award upon the subject matter. *See* § 28-9-18(a)(2).

The arbitrator concluded that the town had violated the CBA by failing to appoint the grievant to the vacant detective position within forty-five days of the creation of the vacancy. The union conceded at oral argument before this Court that the arbitrator's decision results in the following: anytime a detective position vacancy is created, the town must fill the vacancy within forty-five days. Indeed, in its papers before this Court, the union asserts that "a vacancy that is created has been recognized." The union asserts that this Court must uphold the arbitrator's award because the arbitrator focused on the language of the CBA, permissibly looked to dictionary definitions of the word "recognize," and produced a "passably plausible" interpretation of the CBA. We disagree.

The arbitrator's decision lacks a basis in the essence of the CBA and produces "completely irrational" results. *RIBCO III*, 115 A.3d at 928. The plain language of the forty-five-day provision reserves the right of the town to exercise its managerial prerogative *not* to fill a vacancy by providing that the forty-five-day clock begins to run only once the town "recognizes" the vacancy; this provision plainly requires some affirmative action by the town to *recognize* the vacancy for purposes of filling the vacancy pursuant to that provision. Mere notice of the creation of a vacancy by the retirement of a detective was not enough under the terms of the CBA.

While this Court's role is "not to determine whether the arbitrator has resolved the grievance correctly[,]" *Prospect Chartercare, LLC*, 185 A.3d at 544 (quoting *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)), in this case the arbitrator's error produces "completely irrational" results. *RIBCO III*, 115 A.3d at 928. The arbitrator's interpretation of the CBA relies on decades-old definitions of the word "recognize" to nullify the distinction between "creation" and "recognition" of a vacancy, and thus deprives the town of its reserved managerial discretion.

This error is not a mere misconstruction of the CBA. *See Prospect Chartercare, LLC*, 185 A.3d at 544. Rather, the arbitrator's interpretation contravenes the essence of the CBA by "manifest[ly] disregard[ing]" relevant provisions of the CBA relating to the town's managerial prerogatives. *RIBCO III*, 115 A.3d at 928. Numerous provisions throughout the CBA reserved to the town its

- 10 -

managerial discretion over staffing. Though the arbitrator recited the relevant provisions in his decision, he subsequently "manifest[ly] disregard[ed]" them when he determined that the town must recognize—and subsequently fill—a vacancy upon its *creation*. *Id.*; *cf. RIBCO II*, 64 A.3d at 740 (explaining similarly that "[a] manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it") (brackets omitted) (quoting *Cumberland Teachers Association*, 45 A.3d at 1192).

For example, Section 4 of Article VII of the CBA—which governs vacancies—provides, "[*i*]*f* the Town determines to fill vacancies, it shall send an e-mail and/or post on the bulletin board located in the squad room for a period of at least ten (10) consecutive days, all vacancies that have become available[.]" (Emphasis added.) The arbitrator acknowledged that the vacancy created in the present case by the retirement of Det. Godin was created pursuant to Article VII. However, the arbitrator wholly overlooked Section 4 of Article VII, and he essentially nullified that section when he determined that "recognition" requires mere "notice."

Further, the management-rights provision of the CBA, as described previously, specifically provides that, "except as limited, abridged or relinquished by the terms and provisions of this agreement, all rights to manage, direct or supervise the operation of the department and the employees are vested in the

- 11 -

Town." Though the arbitrator acknowledged the management-rights provision, he failed to meaningfully analyze the forty-five-day provision within the context of it.

As discussed herein, the arbitrator reasoned that the forty-five-day provision was one of the managerial limitations contemplated by the management-rights provision of the CBA. After subsequently determining that the town "recognizes" a vacancy merely by having "notice" of the vacancy, however, the arbitrator failed to reconcile this interpretation with the management-rights provision. The arbitrator's decision upends the presumption of managerial prerogative contained in the management-rights provision of the CBA, in favor of a presumption that the town must fill a vacancy within forty-five days of its creation, regardless of the town's ability to control how and when a vacancy is created. The union appeared to understand the lack of a limitation on this interpretation, urging this Court at oral argument to accept that the town would be *required*, within forty-five days, to fill a vacancy created in the case of the death of a detective in the line of duty. The arbitrator's "manifest disregard" of these relevant provisions of the CBA produced an interpretation of the CBA that contravenes its essence, which places a presumption in favor of the managerial prerogative of the town to direct its employees in their capacities as public safety officers. *RIBCO II*, 115 A.3d at 928.

The union points out that the arbitrator found that the town did not change its organizational chart during the relevant forty-five-day time period after Det. Godin's

retirement. As discussed herein, Article III, Section 1 of the CBA incorporates an organizational chart into the CBA, and provides that "[t]he Town shall supply the Union with the current Organizational Chart * * * upon which shall be listed the numbers and ranks of officers and patrolmen authorized to serve on the department. * * * Any changes in the Organizational Chart, including but not limited to, changes in its design, staffing, numbers and/or ranks shall be management's prerogative."

The union does not explicitly assert that this provision independently establishes an obligation on the part of the town to fill every vacancy, and, in any event, any such assertion would be meritless. The plain language of Article III, Section 1 of the CBA provides that the town's organizational chart outlines the number and ranks of officers *authorized* to serve. The language is not mandatory; requiring the town to modify the organizational chart in order to avoid filling a vacancy it otherwise would not choose to fill places a limitation on the town's managerial prerogative "contained nowhere within the CBA." *Woonsocket Teachers' Guild, Local 951, AFT*, 770 A.2d at 839 (emphasis omitted). Giving due regard to each provision of the CBA establishes that the town retains managerial prerogative—within the outer confines set by the organizational chart—to make day-to-day staffing decisions, and to otherwise "direct employees in the performance of official duties[,]" "to maintain the efficiency of the operations entrusted to it[,]" and "to exercise any and all rights and authority granted to the Town as an employer by

- 13 -

statute, ordinance and applicable regulations, and to comply with its responsibilities thereunder."

Because we have determined that the arbitrator's award in this case failed to draw its "essence from the contract[,]" "manifest[ly] disregard[ed]" relevant provisions of the CBA, and produced "completely irrational" results, *RIBCO III*, 115 A.3d at 928, we hold that the arbitrator "so imperfectly executed" his authority such that he did not provide "a mutual, final, and definite award upon the subject matter[.]" Section 28-9-18(a)(2). We therefore vacate the arbitration award pursuant to § 28-9-18(a)(2).

**Conclusion**

For the foregoing reasons, we vacate the judgment of the Superior Court and remand the record of the case for further proceedings consistent with this opinion.

**Justice Robinson, dissenting.** After reviewing the arbitrator's decision in this case as well as the trial justice's thoughtful rescript decision and after considering the arguments of the parties, I have come to the conclusion that I must respectfully but vehemently dissent from the majority's opinion in this case. In my view, bearing in mind the applicable standard of review, the judgment affirming the award of the arbitrator in this case should be upheld. I am simply unable to reconcile

the majority's contrary decision with our venerable and well-settled precedent in the domain of labor arbitration.

We have stated that "[w]e review arbitral awards under an *exceptionally deferential standard* as a means of ensuring that parties may benefit from arbitration as a relatively informal and expedient alternative to litigation in the court system." *Cumberland Teachers Association v. Cumberland School Committee*, 45 A.3d 1188, 1191 (R.I. 2012) (emphasis added) (internal quotation marks omitted). In the same vein, we have stated that "arbitration awards enjoy a *strong presumption of validity* given the strong public policy in favor of the finality of arbitration awards." *Pierce v. Rhode Island Hospital*, 875 A.2d 424, 426 (R.I. 2005) (emphasis added) (internal quotation marks omitted); *see also City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281, 1285 (R.I. 2009); *Prudential Property and Casualty Insurance Co. v. Flynn*, 687 A.2d 440, 441 (R.I. 1996) ("[C]ourts look with disfavor on efforts to overturn arbitration awards and thereby frustrate the arbitration process.").[1]

In my judgment, plaintiff, the Town of North Providence (the Town), has completely failed to indicate to this Court a sufficient basis on which to overcome

---

[1] In *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339 (R.I. 2008), this Court noted that "[j]udicial deference to arbitral awards has long been a characteristic of the American legal system." *North Providence School Committee*, 945 A.2d at 344 n.9.

- 15 -

the presumption of validity of the arbitration award in favor of defendant, the Fraternal Order of Police, Lodge 13. We have emphasized that "the role of the judiciary in the arbitration process is extremely limited;" and, in my view, this is not close to being a case where this Court should vacate the arbitration award at issue. *Aponik v. Lauricella*, 844 A.2d 698, 703 (R.I. 2004) (internal quotation marks omitted); *see also State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 64 A.3d 734, 739 (R.I. 2013). The majority does acknowledge our exceptionally deferential standard of review in this area; but it then opts not to give the arbitration award the degree of deference which it is due under our law.

We have specifically provided that "[t]he court has no authority to vacate the arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter that was not arbitrable in the first place." *Cumberland Teachers Association*, 45 A.3d at 1192 (internal quotation marks omitted); *see* G.L. 1956 § 28-9-18; *see also Prudential Property and Casualty Insurance Co.*, 687 A.2d at 441 ("Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene."). Indeed, "[a]s long as an arbitrator's award draws its essence from the contract and is based upon a passably plausible interpretation of the contract, it is within the arbitrator's

authority and our review must end." *City of East Providence*, 982 A.2d at 1285 (internal quotation marks omitted); *see Jacinto v. Egan*, 120 R.I. 907, 911-12, 391 A.2d 1173, 1176 (1978). The majority holds that the arbitrator's decision "lacks a basis in the essence of the CBA[,] produces 'completely irrational' results," and manifestly disregards the contract. While I do not question the sincerity of my colleagues' adherence to those holdings, I am convinced that those holdings are not justified by the record before us when considered in the light of decisions issued by this Court over the past several decades. *See Wiggins v. Pianka*, 247 A.3d 135, 139 (R.I. 2021) (holding that this Court was "satisfied that [respondent had] failed to overcome the *formidable burden* necessary to defeat the presumption of validity to which an arbitration award is entitled") (emphasis added).

The arbitrator in this case considered the contractual language and engaged in interpreting that language; while he may not have reached the same conclusions about the meaning of the term "recognize" and its relationship with other sections of the contract (particularly those which the majority characterizes as relating to "the

- 17 -

town's managerial prerogatives"[2]) as the majority would have reached,[3] his conclusion was, to my mind, at the very least "passably plausible" and drew its essence from the contract itself (including with respect to the word "recognize"). *City of East Providence*, 982 A.2d at 1285 (internal quotation marks omitted). We have specifically stated that to reverse "an arbitration award based solely on the reviewing court's disagreement with the arbitrators' interpretation of the contract would not only nullify the bargain made by the parties but also threaten the strong public policy that favors private settlement of grievance disputes arising from

---

[2]    I do not question the fact that the Town has certain managerial prerogatives. However, it is clear to me that the Town surrendered some part of its managerial rights during the give-and-take of the collective bargaining process when it agreed to the forty-five-day window provided for in Article VIII, § 1 of the CBA. And, since the arbitrator's interpretation of that provision is at least "passably plausible," I believe that we are required by our oft-articulated standard of review with respect to arbitration awards to confirm the award at issue. *City of East Providence v. International Association of Firefighters Local 850*, 982 A.2d 1281, 1285 (R.I. 2009) (internal quotation marks omitted).

[3]    The majority posits that the CBA section in question "plainly requires some affirmative action by the town to *recognize* the vacancy for purposes of filling the vacancy * * *." (Emphasis in original.) In my opinion, the term "recognize" does not *plainly* indicate anything—rather, its meaning in this context is ambiguous and open to interpretation. That being the case, I do not see how one could contend that the arbitrator's interpretation of what I consider to be an ambiguous word in the context of the CBA manifestly disregarded the contract or failed to draw its essence therefrom. *Cf. City of Newport v. Lama*, 797 A.2d 470, 473 (R.I. 2002) ("[T]he arbitrator's award should not have been confirmed because she manifestly disregarded the clear and unambiguous language of the contract.").

- 18 -

collective bargaining agreements." *Jacinto*, 120 R.I. at 911-12, 391 A.2d at 1175 (internal quotation marks omitted).

What is more, even if one were to concede that the arbitrator did commit an error of law (a concession that I am not prepared to make), that is not sufficient reason to vacate his decision. We have "no authority to vacate an arbitration award based upon a mere error of law." *State, Department of Corrections*, 64 A.3d at 740.

As such, in my opinion, we are controlled by the applicable standard of review in arbitration cases. There is no basis in this case for concluding that the arbitrator manifestly disregarded the contract, reached an irrational result, or that his award failed to draw its essence from the CBA at issue. Therefore, I am entirely unable to perceive a legal basis on which to vacate his decision. I wholeheartedly agree with the decision of the trial justice, and I remain perplexed and troubled by the majority's view to the contrary.

Accordingly, I must record my respectful but vigorous dissent in this case.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Town of North Providence v. Fraternal Order of Police, Lodge 13. |
| **Case Number** | No. 2021-58-Appeal.<br>(PM 18-6456) |
| **Date Opinion Filed** | June 28, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Vincent F. Ragosta, Esq.<br>For Defendant:<br><br>Edward C. Roy, Jr., Esq. |